**Chris CORLEY, a minor, by Jean Sizemore, his mother, next friend and legal guardian, Plaintiff,**

**v.**

**Warren DAUNHAUER, individually and in his capacity as band director for the Forest Heights Junior High School Band, et al., Defendants.**

**No. LR–70–C–14.**

United States District Court,
E. D. Arkansas, W. D.
May 8, 1970.

John P. Sizemore, Little Rock, Ark., for plaintiff.

Robert V. Light, Little Rock, Ark., for defendants.

## Memorandum Opinion

HENLEY, Chief Judge.

This is a suit brought by Chris Corley, a 12 year old 7th grade public school student, enrolled in the Forest Heights Junior High School in the City of Little Rock, Arkansas, against his band director, the principal of the school, the Superintendent of the Little Rock Public Schools, and the members of the Little Rock School Board. At issue is the federal constitutionality of a Little Rock school policy directed at students who take music education or, as it is more commonly called, "play in the band," as to the length at which their hair must be worn.[1]

School band activities consist of classes, of practice sessions, and public appearances at such events as athletic contests and band concerts. School bands compete with each other and are judged not only on the basis of their music but also on the basis of their appearance, exactitude in drill and marching procedures, and overall "smartness." Band members properly take pride in themselves as members of the band and in their organization not only in and for itself but also in connection with its standing in relation to other bands with which it competes. While junior high school band activities are not as far flung as those of senior high school bands, they are not insubstantial, and the Court supposes that they are just as important to the young students who participate in them as the senior high school band activities are to the older students who participate in them.

As the Court understands it from the record, as implemented by a letter to the Court from counsel for the defendants, dated February 20, 1970, the policy here challenged by the plaintiff is that students who desire to participate in the band program must conform their hair lengths and styling to the requirements of their band director, subject to the approval of the school principal, and that a student who refuses to do so may be excluded from the band.

Plaintiff is wearing his hair long in protest against continued participation

1. There has been a good deal of litigation in this area in the last few years and more may be expected. See e. g., Breen v. Kahl, 7 Cir., 419 F.2d 1034; Ferrell v. Dallas Independent School District, N.D.Tex., 261 F.Supp. 545, aff'd 5 Cir., 392 F.2d 697, one Judge dissenting, cert. den., 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed. 2d 125, Justice Douglas dissenting; Richards v. Thurston, D.C.Mass., 304 F. Supp. 449; Westley v. Rossi, D.C.Minn., 305 F.Supp. 706; Crews v. Cloncs, S.D. Ind., 303 F.Supp. 1370; Griffin v. Tatum, M.D.Ala., 300 F.Supp. 60; Zachary v. Brown, N.D.Ala., 299 F.Supp.

1360. See also Leonard v. School Committee of Attleboro, 349 Mass. 704, 212 N.E.2d 468, 14 A.L.R.2d 1192, and Annotation beginning at Page 1201. Opinions handed down since February 1969 have had occasion to discuss Tinker v. Des-Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731; and recently the Court of Appeals for this Circuit has had occasion to cite Tinker in relation to college students, Esteban v. Central Missouri State College, 8 Cir., 415 F.2d 1077, 1085–1087.

by the United States in the war in Viet Nam. The Court will assume for purposes of discussion that the child's opposition to the war is sincere, and that he sincerely believes that to wear his hair long is a proper and legitimate means of expressing his protest and opposition to our continued involvement in the conflict. The Court finds from its inspection of the boy during the trial of the case and from an examination of the photograph introduced in evidence that plaintiff's hair is substantially longer than that usually worn by 12 year old boys, and has reached a length sufficient to make it obvious to anyone who looks at him.

In early January 1970 the defendant band director advised plaintiff that he would have to shorten his hair or get out of the band; later the director relented temporarily to the extent of permitting plaintiff to attend band classes and practice sessions but with the stipulation that he could not appear in public band performances.[2] Despite this temporary relenting, which seems to have been to some extent *pendente lite* or in anticipation of litigation, it was made clear to the Court in the course of the trial that if the school's policy is valid, it will be applied to plaintiff so as to exclude him from the band entirely.

After the case was heard, the Court suggested to counsel that the controversy involving this particular plaintiff be put to one side at least for the balance of the current school year. That suggestion was not acceptable to either side; both sides feel that the constitutional question presented is substantial, and that it ought not to be postponed.

While this case involves band students only and while the only thing immediately involved in the case is the right of a long haired band student to continue to play in the band, it is obvious that a much broader issue is lurking in the background, namely the right of the Little Rock schools to exclude from all classes students who wear their hair at what the school authorities deem to be an unreasonable, outlandish, or nonconforming length. That broad issue has been presented in the cases heretofore cited in the margin. With regard to those cases it may be said that plaintiffs therein have not enjoyed uniform success; neither have they experienced uniform failure; they have won some cases, and they have lost some.

The excellent briefs of counsel have been devoted in large measure to a discussion of the broader issue just mentioned, and the Court gets the impression that they would like to have that issue decided here, perhaps in the hope of avoiding future litigation which would almost certainly involve counsel for the defendants and which might well involve counsel for plaintiff as well. To the extent that the Court has been invited to decide the broader issue, it declines the invitation and will confine itself to what is before it.

That issue is whether, in the light of relevant provisions of the First and Fourteenth Amendments to the Constitution of the United States, the specific policy of the Little Rock schools directed at band students is constitutionally valid. As the Court understands it, plaintiff takes the fundamental position that the schools have no constitutional right to regulate the length of the hair of a band student, particularly where the hair is worn at an unusual length or in a special way as a protest against a real or supposed social, political, or economic evil. The Court does not understand that plaintiff attacks the policy as being void for indefiniteness or because the implementation of the policy with respect to individual students is left to the discretion of the band director, subject to the approval of the school principal.

The position of the defendants is that the regulation is reasonable and neces-

2. It does not appear that there has been a public performance of the Forest Heights band since this controversy arose; hence, it does not appear that plaintiff has been barred up to now from participation in such a performance.

sary for the discipline, good order, and success of the band, that it is valid, and that it was properly applied to the plaintiff as an individual.

Thus is the issue for decision joined.

█ The Court finds that assuming the validity of the policy its application to plaintiff was proper or at least reasonably justified. The Court further finds that the school authorities propose to exclude plaintiff from the band solely because of the *length* of his hair. No claim is made that his hair is dirty or unkempt or presents a health hazard; nor is it claimed that apart from hair length there exists any reason for excluding plaintiff from this particular school program.

There is no evidence here that the school is trying to prevent plaintiff from protesting against the Viet Nam war or against anything else, or that it is trying to punish him for his protest. The school authorities simply think that a member of the school band ought to conform to generally accepted norms as to hair length and styling and should be willing to make a choice between leaving the band, on the one hand, or conforming his or her hair to school requirements, on the other hand.

Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731, cited by both sides, reiterates the established principle that up to a point at least federal constitutional rights, including rights protected by the First Amendment, follow students and teachers into the classrooms. While *Tinker* did not involve hair length, but rather black arm bands worn in protest against the Viet Nam conflict, and while the Court was careful to point out that the problem presented did not relate to regulation of the length of skirts or the type of clothing, or to hair style or deportment of students, 393 U.S. at 507–508, 89 S.Ct. 733,[3] the decision is obviously instructive in cases involving efforts of school authorities directed at any visual expression of protest or dissent.

█ This Court does not stop to quote from *Tinker* or to analyze it in detail. *Tinker* recognized that school officials necessarily have a broad discretion in running the schools and in regulating student life, and that day to day conflicts arising in the schools between pupils and those in charge of them should not ordinarily be matters of judicial concern. But, the Court also recognized that judicial problems may arise when the exercise of constitutional rights comes into conflict with school rules. And the Court held that a prohibition against expression of opinion without any evidence that the rule is necessary to avoid substantial interference with school discipline or the rights of others constitutes a violation of the First and Fourteenth Amendments.

█ The principles involved in controversies between students who want to wear their hair long, for whatever reason, and school authorities who require them to wear it short, have been canvassed thoroughly by the Court of

---

3. It is interesting to note that in *Tinker* the Court cited without apparent disapproval the early decision of the Supreme Court of Arkansas in Pugsley v. Sellmeyer, 158 Ark. 247, 250 S.W. 538, in which a majority of the Arkansas Court held valid a local school regulation prohibiting girls from wearing transparent hose, low necked dresses, or other "immodest" apparel, and also prohibiting them from using cosmetics; the majority view was that such prohibitions rested within the discretion of local school boards. In a short but pithy dissent Associate Justice Hart stated that in his opinion a regulation which prohibited an 18 year hold high school girl in 1923 from putting talcum powder on her face was so ridiculous as to be unreasonable, arbitrary, and void, and said that the opinion of the majority pointed up the truth of the adage that " 'Useless laws diminish the importance of necessary ones.' " 158 Ark. at 255, 250 S.W. at 540. It should be observed that while the majority upheld the regulation in question, it recognized that the authority of school boards in the area of student dress and appearance is not unlimited.

Appeals and the District Court cases cited in footnote 1, supra. Particular attention is called to the detailed discussion of the problem appearing in Judge Wyzanski's original and three supplemental opinions in Richards v. Thurston, D.C.Mass., 304 F.Supp. 449. Proper resolutions of such controversies seem to this Court to involve primarily the recognition and application of constitutional principles that have been evolved in earlier and somewhat different contexts. Yet the Courts in addressing themselves to such cases should confine themselves to the issues and facts before them; as Judge Wyzanski puts it, 304 F.Supp. at 454, they should "shoot like a rifle at the parties' target and not like a cannon at a public issue."

■■ While public school students in the course of their school attendance are entitled to recognition and protection of certain constitutional rights, they, not unlike inmates of penal institutions, are subject to certain restrictions not imposed on adult citizens of the "free world." Their rights must be measured and applied "in light of the special characteristics of the school environment." *Tinker*, supra, 393 U.S. at 506, 89 S.Ct. at 736. Public school students are subject to institutional discipline and to punishment, at times more or less summary, for infractions of school rules. Cf. Talley v. Stephens, Superintendent of the Arkansas State Penitentiary, E.D.Ark., 247 F.Supp. 683; Holt v. Sarver, E.D. Ark., 300 F.Supp. 825.

■ Restrictions on students, whether college, high school, or junior high school, do not amount to criminal codes; they are not imposed as punishments. "They are codes of general conduct which those qualified and experienced in the field have characterized not as punishment but as part of the educational process itself * * *." Esteban v. Central

Missouri State College, 8 Cir., 415 F.2d at 1088.

■ Reasonable restrictions on students in the fields of conduct, dress, and appearance are desirable if the schools are to operate effectively and efficiently. That is necessarily so because learning for many people is a discipline rather than a pleasure, and if it is to be practiced successfully, the practice must be carried out in dignified and orderly surroundings. Public school students, particularly those at the elementary and junior high school levels, are still immature, some of them are children of tender years. They are excitable and prone to be distracted from their tasks. Whatever may be thought about conformity in general, it seems clear that reasonable conformity to established norms of dress and appearance contributes to orderly administration of classrooms, and that uncontrolled individuality of appearance tends to disrupt it. That has been the uniform experience of public school teachers and administrators for years, and that is why many of them have an almost reflexive tendency to move against personal oddities or eccentricities in the dress or appearance of individual students.

■ But, a school regulation or policy directed at a given pupil or group of students must, like any other administrative dictate, be reasonable and must be rationally related to a legitimate educational objective such as the imparting of knowledge or the maintenance of discipline so that students may learn. An unreasonable or arbitrary regulation or one which has no rational relationship to a legitimate educational end, or one which is out of keeping with the purpose and spirit of a public educational program cannot stand. Cf. Thomas v. Housing Authority of the City of Little Rock, E.D.Ark., 282 F.Supp. 575.[4]

4. In that case this Court held invalid a regulation of the Little Rock Housing Authority which rendered a family group ineligible for low cost public housing if the group contained an illegitimate child. The Court held that the regulation was not reasonably related to the program which the Housing Authority was administering, and that in fact it militated against one of the prime objectives of the program.

■ An administrative policy or action, including a school policy or action, legitimate in itself, may trespass upon a personal right of a student which right is of high order and may colorably be claimed as constitutionally protected. When that situation arises, the public authority must show that it has a strong interest in the enforcement of the policy or action which makes appropriate the curtailment of the right. That was expressly recognized in Richards v. Thurston, supra, 304 F.Supp. 452.

■ Finally, a school policy directed at dress or appearance that might be unreasonable or arbitrary in connection with general attendance at the school may be relevant and proper if limited to certain classes or school programs. That also was recognized in Richards v. Thurston, supra, 304 F.Supp. at 454.

■ Coming now to the application of those principles to the facts of this case, the Court finds and concludes that the Little Rock school system has a right to require students who desire to participate in the school band program to conform their hair length to reasonable requirements of the respective band directors, that the requirement that has been made extends to students who desire to depart from normal standards of dress and appearance as a means of social protest, and that in so doing it does not unconstitutionally deprive them of a federally protected right. As already indicated to some extent, the Court finds that this plaintiff has refused to abide by a valid requirement of his band director, that he persists in his refusal, and that he is subject to being excluded legally from the band.

A public school band is a group within a group. Like any other military or concert band it is characterized by regimentation, and, except in a specialist category, it has no place for an individual exhibitionist, regardless of his motivation. While broad student participation in a school band program dictates that there shall be wide differences in the shapes, sizes, and sexes of musicians, and while the Constitution prohibits racial segregation in school bands, as in other areas of school life, apart from those things uniformity is the requirement and conformity is the watchword. The students wear similar uniforms, they march in step, they lift their instruments simultaneously, and they play subject to the direction of their director or drum major. When an audience listens to a performing band, it, of course, hears solo numbers from time to time, but, in general, the audience looks at and listens to the band as a whole. And the harmony of a band derives not only from the music that it is playing but also from the impression that the band as a unit makes on the eye and mind of the beholder. Whatever distracts the attention of the audience from the band as a whole to a non-conforming individual musician militates against the band in the effectiveness of its performance.

■ A school band being what it is, it is certainly not unreasonable for the school to require that the band members wear uniforms; nor does the Court think it unreasonable for the school to require band members to achieve uniformity in personal appearance, to the extent that such uniformity lies within their control. And the Court thinks that the right to make the latter requirement includes the right to insist that the personal appearance of boys, including the length of their hair, and that the personal appearance of girls, including the length and arrangement of their hair, correspond to generally accepted norms of appearance for members of the respective sexes.

Let it be remembered that this plaintiff's right to protest against the Viet Nam war by wearing his hair long is no higher or better than the right of some other band member to protest against something else in some other manner. What would be the effect on the band if plaintiff appeared on the stage with his hair long in protest against the Viet Nam war, while another student appeared with his head shaved in protest against the military-industrial complex, while another appeared with his uniform

conspicuously sprinkled with ashes in protest against racial or economic discrimination, and while yet another student appeared clad partially in an Indian costume in protest against American treatment of the Indians? To ask that question is to answer it.

This Court would have more trouble with this case if plaintiff had indicated any willingness to have his hair cut in advance of any public appearance of the band, but no such willingness has been manifested. Plaintiff has elected to stand or fall on the ground that he has chosen.

The complaint will be dismissed.