Merle Keith **JEFFERS**, Jr., a minor, by and through his Natural Guardian, Merle Keith Jeffers, et al., Plaintiffs,

v.

**YUBA CITY UNIFIED SCHOOL DISTRICT et al., Defendants.**

**Civ. No. S–1555.**

United States District Court, E. D. California.

Sept. 2, 1970.

Ralph S. Abascal, Marysville, Cal., for plaintiffs.

Bert W. Levit, Long & Levit, San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

WILKINS, District Judge.

Plaintiffs seek to have certain portions of the dress code pertaining to the length of male students' hair at Yuba City High School declared unconstitutional and to enjoin the defendants from enforcing them. The motion for a preliminary injunction and the prayer for declaratory and permanent injunctive relief were consolidated for trial, which commenced April 7, 1970.

At the beginning of the 1969–1970 school year dress regulations were in effect which prohibited the wearing of "excessive hair styles" by male students. In February of 1970 the standards were formalized, prohibiting beards and forbidding sideburns below the ear lobe, and hair draping over the ears, shirt collars or eyes.

The plaintiffs Merle Keith Jeffers, Jr., Steven P. Smith and Alfred Gary Lopez are students at Yuba City High School.[1] They brought this class action on behalf of all male students in the high school. On March 4, 1970, Steven Smith was suspended from school for having hair longer than allowed by the regulation. The following day Merle Jeffers, Jr., was likewise suspended for having excessively long hair. Both of these plaintiffs have

---

1. Although Alfred Gary Lopez is nominally a plaintiff, he has not violated the hair regulations and was not suspended from school. He testified at trial that he would like to grow his hair longer but cannot because of the regulations.

been readmitted to school pursuant to a temporary restraining order issued by this Court pending a final determination on the merits.

Although no action was taken against the plaintiffs until March, it seems that the haircut regulations have been the subject of some dispute for the majority of the present school year. At the beginning of the year the student senate passed a resolution to abolish hair regulations at the school. The resolution was then vetoed by the commissioners of the school because it purportedly did not represent student opinion. The entire student body was then polled. There is some dispute as to the accuracy of the poll, but it seems that a majority of the students favored abolishment of the hair regulations. The student senate then overruled the commissioners' veto, but the resolution was again finally vetoed by the school principal, George Souza. The issue was finally brought before the Board of Trustees of the school on February 16, 1970. The Board upheld the regulations.

The Court now turns to an analysis of the law in this area. No less than thirty "haircut" opinions from district, circuit and state courts have been brought to the attention of this Court. The legal reasoning of these opinions is in complete disarray and both the nature and extent of the right of a male student to wear his hair at any desired length are far from being settled issues. *See* Griffin v. Tatum, 300 F.Supp. 60 (N.D.Ala., 1969). The Court will therefore deal with each of the legal theories proposed by the plaintiff ad seriatim.

1. *Is the hair regulation void for vagueness?*

■ Before the plaintiffs were suspended from school the term "excessive hair styles" was formally clarified to mean no beards, no sideburns below the ear lobe and no hair over the eyes, ears or shirt collars. The criterion for judging whether a regulation or statute is too vague is that of fair notice to those governed by the regulation. American Com-

munications Ass'n, C.I.O. v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925, reh. den. 339 U.S. 990, 70 S.Ct. 1017, 94 L.Ed. 1391 (1950). In this case the standards to be applied under the hair regulations could not have been clearer. There is no allegation that plaintiffs were not apprised of the standards nor that they could not understand them. The claim of vagueness is therefore without merit.

2. *Did the regulation violate plaintiffs' rights to procedural due process under the 14th Amendment for failure to give notice or an opportunity to be heard?*

Plaintiffs claim that their rights to procedural due process were violated in two ways: (a) by the refusal of the Board of Trustees to consider changing the regulation in the face of obvious opposition to it by a majority of the students, and (b) by not affording plaintiffs a fair hearing before suspending them.

■ The first claim is without legal merit. No authority is cited for the proposition that the Board is constitutionally bound to consider changing a school regulation simply because many students support the change, and the Court is unable to find any.

■ As to plaintiffs' right to a hearing, they do not deny that their hair was longer than allowed by the regulation. Violation of the rules was obvious from looking at the plaintiffs, so there was no factual dispute to be resolved by the hearing of evidence. Both plaintiffs were warned about the excessive length of their hair and told that they could return to school whenever their hair was cut. The mother of Steven Smith and the father of Merle Jeffers, Jr., both discussed the suspensions with school administrators. Under the circumstances plaintiffs were not deprived of their due process rights by the refusal to give them an adversary hearing prior to suspension. Jackson v. Dorrier, 424 F.2d 213 (6th Cir. 1970).

*3. Were plaintiffs deprived of their right to privacy or personal liberty under the First Amendment or their "penumbral" rights under the First, Third, Fourth, Fifth, Ninth and Fourteenth Amendments?*

Primarily plaintiffs rely on Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) and argue that the right to wear one's hair as he sees fit is akin to the right of privacy protected in that case. There the court was badly divided on the issue of which amendment to the Constitution invalidated a Connecticut statute forbidding the use of contraceptives, although a majority of the court agreed that it was unconstitutional.

 Four separate opinions were written by members of the majority of the court, each attempting to analyze the constitutional issue differently. In reading the opinions of the majority it becomes evident that the only unifying factor is the feeling of all the majority that it was abhorrent to our system of jurisprudence for the legislature to invade the privacy of the marital bedroom and prohibit the right of husband and wife to choose whether they will practice birth control or not. The personal nature of the subject matter with which the state statute dealt was the nub of the constitutional right to privacy which the court upheld. This factor is absent in the present context. Here the subject of dispute is the right of students to wear their hair publicly, in a school setting, as they will. The court does not believe that the *Griswold* case can be extended to cover this situation.

It is true that other federal courts have used the *Griswold* reasoning in analyzing haircut cases. This is an indication of the difficulty facing the courts in ascertaining the rubric under which such cases should be handled. This Court too is faced with the same perplexing problem, but does not feel that the "penumbral" doctrine is the proper context for this situation.

*4. Do the haircut regulations deprive plaintiffs of their right to freedom of expression as guaranteed by the First and Fourteenth Amendments?*

At trial Merle Jeffers, Jr., testified that his hair was an expression of his freedom and identity. Alfred Lopez testified that to him hair is an expression of his personality. Steven Smith testified that he thinks a lot about his hair length. Based on this testimony plaintiffs argue that hair length is to them a form of communication or expression which is protected by the First Amendment.

Plaintiffs further argue that in the hierarchy of constitutional values, First Amendment free speech rights hold a preferred position and therefore the school has a substantial burden of justification if it infringes upon those rights. For this proposition the plaintiffs cite Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). In *Tinker* the court held that the wearing of black armbands to high school to protest the Vietnam War could not be prohibited in the absence of a showing of facts which reasonably would have led the school authorities to believe that substantial or material disruption of school activities would take place.

Two observations should be made about *Tinker,* supra. First, the court specifically stated,

The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment. Cf. Ferrell v. Dallas Independent School District, 392 F.2d 697 (C.A. 5th Cir. 1968); Pugsley v. Sellmeyer, 158 Ark. 247, 250 S.W. 538, 30 A.L.R. 1212 (1923). It does not concern aggressive, disruptive action or even group demonstrations. Our problem involves direct, primary First Amendment rights akin to "pure speech." 393 U.S. 503 at 507, 89 S.Ct. 733 at 737.

Thus the court specifically exempted the regulation of hair style from the purview of the opinion.

The second observation is implied also from the above quoted language. The free speech area of the First Amendment seems to have a chameleon like quality about it. It covers "speech pure" and "speech plus," the latter being the communication of ideas by conduct rather than words. Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed. 2d 471 (1965). *See also* Kalven, The Concept of the Public Forum: Cox v. Louisiana, The Supreme Court Review, 1, 21–27 (1965). The protection of the First Amendment is afforded on a sliding scale—the less the speech element and the more the conduct element, the less protection the First Amendment gives. *See* United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); Cox v. State of Louisiana, supra.

In this case the speech element is minimal if existent at all in a constitutional sense. Plaintiffs are not attempting by the length of their hair to express a definitive point of view on any philosophical, political or social issue as was the case in *Tinker*, supra. They are trying to express their personalities. The length of one's hair in this day and age is at best a vague indication of personality, certainly no better than the color or kind of clothes one wears, the make-up a girl wears or the deportment of an individual.

The First Amendment does not prohibit activity which abridges "freedom of expression" as such, but rather "freedom of speech." It is true that speech in the constitutional sense includes more than verbal communication, but as the Supreme Court said,

> We cannot accept the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea. United States v. O'Brien, 391

U.S. 367 at 376, 88 S.Ct. 1673 at 1678.

Thus this Court does not think that the right of a student to wear his hair at any desired length is speech within the meaning of the First Amendment; but even if this right has some elements of speech, the Court does not feel it appropriate to hold the defendants to the substantial burden of justification which the plaintiffs urge.

5. *Do the hair regulations at Yuba City High School substantively violate the 14th Amendment to the Constitution?*

In the Court's opinion this is the proper framework within which to place the hair regulation problem. Plaintiffs argue that if there is no reasonable relationship between the educational process and controlling the length of a male student's hair, then the regulations here at issue make an arbitrary distinction which violates the Equal Protection Clause of the Fourteenth Amendment. The Court agrees. *See* Zachry v. Brown, 299 F.Supp. 1360 (N.D.Ala.1969). Furthermore, the regulations obviously infringe upon the freedom of plaintiffs to look, act and do as they will, and if there is no reasonable relationship between the regulations and a legitimate concern of the school administration this deprivation of liberty violates the Due Process Clause of the Fourteenth Amendment as well. Brick v. Board of Education, 305 F.Supp. 1316 (D.C.Col.1969).

Thus, in order to pass constitutional muster the regulations must be justified on a reasonable and rational basis. Jackson v. Dorrier, 424 F.2d 213 (6th Cir., 1970); Richards v. Thurston, 424 F.2d 1281 (1 Cir., 1970); Brick v. Board of Education, supra; Neuhaus v. Torrey, 310 F.Supp. 192 (N.D.Cal., 1970); Stevenson v. Wheeler County Board of Education, 306 F.Supp. 97 (S.D.Ga., 1969).

### 6. The Facts

Plaintiff Merle Jeffers, Jr., testified that although he had been involved in no disturbances on campus over the length of his hair, he had heard of such disturbances involving other students. He could also recall one instance in which a fight actually broke out between two students over the length of one boy's hair. Three teachers at the high school also testified to having personally observed fights between students over hair length. One of those teachers, Elmer Danbom, also testified that he overheard some students threatening plaintiff Steven Smith because of his hair. Another, Mr. Matlock, a P.E. instructor, said he observed a student deliberately stick gum in the hair of another long-haired student, resulting in a fight. Mr. Matlock, Mr. Maxwell, another P.E. instructor, and Mr. Harrison, a special education instructor at the high school, all testified to having observed harassment of long-haired students by fellow students. Mr. Morissey, a music coordinator at the school, described an experience in which a long-haired male visitor was brought to class by one of his students. The appearance of the visitor distracted the students and disrupted the class.

The defendants also placed on the stand several experienced school teachers and administrators who testified to the relationship between extreme styles of grooming and disruption of the educational atmosphere of the school. Of particular interest was the testimony of Dr. Orrin D. Wardle, a professor at Fresno State College. He received his doctorate in education from Berkeley in 1957 and holds as well a Master's degree and PhD in school administration. He has made case studies in the area of school discipline and regulation problems. He has taught on the elementary, high school and college levels and has served as a principal and school district superintendent. He presently teaches courses to school teachers and principals which include lecturing on the subject of grooming regulations.

Dr. Wardle testified that in his opinion extremes of hair style do tend to break the concentration of students and distract them from what is being taught in the classroom. He also stated that long-haired students tend to do less well in school than their peers, although he did not testify to any causal connection between the length of hair and scholarship. He stated that extremes of hair style do create divisiveness and polarization among students which may lead to dissention and physical confrontations. He also stated that much of the distraction caused by long hair takes place behind the back of the student causing it and thus he may not even be aware of it himself.

The plaintiffs in their behalf offer the testimony of a battery of teachers at Yuba City High School and other nearby high schools to the effect that the presence of long-haired students has caused no disruption of the academic atmosphere in their classes and that they can see no connection between the length of hair and the educational process. Some of the teachers also testified that in their opinion the presence of the hair rule itself rather than the presence of long-haired students is the disruptive factor at the school. In the face of this countervailing testimony plaintiffs argue that the defendants have not produced sufficient evidence to justify the suppression of plaintiffs' basic constitutional rights. The Court does not agree.

■ High school students are subject to the California compulsory attendance laws, (Calif.Ed.Code, Secs. 12101–12759), and thus don't always attend school because they want to. In this context maintaining school discipline and preserving a proper study atmosphere is no easy matter. The responsibility for preserving a proper study environment by the implementation of necessary regulations is with the school authorities.

They are the ones who are faced with the day to day problems of preserving and furthering the educational process. They are keenly aware of the multitude of factors which may or may not affect the educational process. They are also aware of the standards of conduct and behavior in the community wherein the school is located which may affect the way in which "long-hairs" will be accepted by their peers. The Court therefore feels that the school authorities should be given the widest discretion within constitutional limits in promulgating regulations in the school. Unless the regulation is arbitrary and capricious the Court will not interfere.

"It must be recognized, however, that school authorities are entitled to make and enforce reasonable regulations for maintaining an effective school system and that the courts should refrain from interference with the functions of the school authorities unless their action is so arbitrary and unjustified as to constitute a significant encroachment upon a personal liberty." (citations omitted) Farrell v. Smith, 310 F.Supp. 732, 737 (S.D. Me., 1970).

There is an abundance of evidence to support the finding that the haircut regulation in this case was not the result of arbitrary and capricious action.

The Court by no means wishes to pass judgment on the wisdom of maintaining the hair regulations here in dispute. This decision deals only with the right of the school administrators to make the regulations.

The Court therefore finds that the hair regulations at Yuba City High School are reasonably and rationally related to the educational process and that they do not deprive plaintiffs of their constitutional rights.

It is therefore ordered that judgment be entered for the defendants. Let defendants prepare and lodge with the Clerk of this Court and with counsel for the plaintiffs a form of judgment in accordance with this Memorandum and Order and applicable statutes and rules.