[Civ. No. 1373. Fifth Dist. Nov. 17, 1971.]

DANIEL MONTALVO, a Minor, etc., Plaintiff and Appellant, v. MADERA UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION et al., Defendants and Respondents.

## COUNSEL

Fred J. Hiestand for Plaintiff and Appellant.

Donald C. Thuesen as Amicus Curiae on behalf of Plaintiff and Appellant.

Roy E. Wolfe, County Counsel, Barstow & Christiansen and Herbert E. Bartou for Defendants and Respondents.

## OPINION

**BROWN (G. A.), J.**—This case involves the validity of a school regulation at Thomas Jefferson Junior High School in Madera limiting the hair length of students attending that public institution. After due notice the minor plaintiff, who was 14 at the time, was suspended on the opening day from the seventh grade for his refusal to comply with the hair regulation then in effect. Three days later he was reinstated after complying with the regulation by getting a haircut. This action in declaratory relief immediately followed.

At the commencement of the trial it was stipulated that the hair regulation was duly adopted, that the minor appellant, Daniel Montalvo, was in fact in violation of the regulation, and that he was suspended because of such violation. It was further stipulated that the pertinent issues of law were:

(a) Whether the governing board of said school district under the California and federal Constitutions could regulate the length and style of hair.

(b) Whether or not the hair regulation in question was constitutionally reasonable.

After a three-day nonjury trial the court rendered its decision for the school district and against the appellant. Findings of fact were waived. The judgment, among other matters, recites: "That the California Legislature is vested with the power to carry out the mandate of the operation of a free public school system in California. (California Constitution, Article 9, Section 1) The Legislature has conferred upon school boards statutory authority to promulgate rules and regulations governing the conduct and operation of public schools (Education Code §§ 921, 925) and pupils must comply with those rules and regulations. (Education Code § 10609; California Administrative Code, Title 5, Education, Article 7, §§ 62, 64[*]) That the 'General Board Policy Relating to Student Grooming and Dress' . . . was duly adopted by the Board of Education of Madera Unified School District pursuant to the foregoing statutory authority and is valid.

". . . . . . . . . . . . . . . . . . . .

"That said hair regulation . . . was duly adopted by officials of Madera Unified School District under the statutory authority of Education Code §§ 921, 925 and 10609 and California Administrative Code, Title 5, Article 7, §§ 62, 64[†] and that there was and is substantial justification for the adoption and enforcement of said hair regulation; to-wit: strong evidence that the wearing of long hair by male pupils in schools of the Madera Unified School District has and does substantially disrupt and interfere with the proper and orderly conduct of the educational processes, has a prejudicial and adverse effect on the academic atmosphere and decorum of the classroom, causes divisiveness and hostility among pupils and presents health and safety hazards.

"That said hair regulation is reasonable and rational and reasonably relates to and serves to enhance the educational function and the health and safety of the pupils of said school district; that the public benefits thereby produced outweigh the consequent impairment of the male student's constitutional rights and there are no alternatives less subversive of those rights.

"That the action of officials of Madera Unified School District in the adoption and enforcement of said hair regulation were not and are not arbitrary, fraudulent, capricious or an abuse of discretion.

*†Sections 62 and 64 of the Administrative Code were deleted in 1969 when title 5 of the code was reorganized. The substance of these old sections is now found in title 5, division 2, article 2, sections 300 and 302.

"That said hair regulation is not vague or uncertain.

"That said hair regulation is applicable, and enforced by officials of Madera Unified School District, equally and uniformly to all male students of said school district.

"That said hair regulation is applicable, and enforced by officials of United States Constitution and the laws and Constitution of the State of California.

"That plaintiff DANIEL MONTALVO was lawfully suspended by school officials from Thomas Jefferson Junior High School on September 16, 17 and 18, 1969, for violation of said hair regulation and his refusal to comply with the direction of school officials that he have his hair cut to comply with said hair regulation. That said suspension did not violate any of plaintiff's rights under the United States Constitution or the California Constitution."

Aside from the problem of whether the cause is moot, the central question on this appeal pertains to the constitutional validity of the hair style regulation under the facts of this case.

At the outset we are confronted with determining whether the cause has become moot. The appellant complied with the regulation in order to be readmitted to school. Secondly, while this appeal has been pending the school grooming code was changed.

Appellant's compliance under the compulsion of a continued suspension from school does not render the matter moot (*Uyeda* v. *Brooks* (6th Cir. 1965) 348 F.2d 633 at p. 635 (revd. on other grounds, *Uyeda* v. *Brooks* (6th Cir. 1966) 365 F.2d 326)). This position was not mentioned in the trial court, nor is it included in the stipulation as to the issues to be resolved by the trial court. Also, despite involuntary compliance, the plaintiff has a continuing interest in determining the validity of the regulation since the suspension remains a part of his disciplinary record.

The regulation under which the suspension occurred read in part:

"Regarding: Hair Length for Boys Attending Madera Unified School District

"Hair must be worn clean and well groomed. Boys must keep their hair neat and trimmed above eyes, ears, and collars. Hair must be tapered up from the neck."

While this cause has been pending on appeal the above regulation was

repealed and a new regulation was adopted, which reads in pertinent part as follows:

"Hair (Boys)

 1. Must be clean at all times.

 2. No longer than collar length."

It is to be noted that the new regulation retains a provision which prohibits hair from being longer than collar length. The latter regulation is not part of the record; however, the contents thereof have been called to the court's attention by respondent and we may take judicial notice thereof. (Evid. Code, § 459, subd. (a); Evid. Code, § 452, subd. (b); Witkin, Cal. Evidence (2d ed. 1966) pp. 153 and 170.)

■ It is true that under some circumstances the repeal of a statute during the pendency of a cause on appeal will render further consideration thereof moot (*Hake* v. *City of Bakersfield* (1942) 49 Cal.App.2d 174 [121 P.2d 25]; *Callie* v. *Board of Supervisors* (1969) 1 Cal.App.3d 13 [81 Cal. Rptr. 440]). Nevertheless, if the repealing statute or regulation re-enacts a material portion of the repealed statute or regulation which forms a part of the basis for the lower court's determination the matter is not moot since the determination by the lower court inheres after, as well as before, the change. (*Carter* v. *Stevens* (1930) 208 Cal. 649, 651 [284 P. 217]; *In re Dapper* (1969) 71 Cal.2d 184, 189 [77 Cal.Rptr. 897, 454 P.2d 905].) ■ Further, this is a matter of general public interest and there is a likelihood of recurrence of the controversy between other students and respondent or among others similarly situated (*Diamond* v. *Bland* (1970) 3 Cal.3d 653 at p. 657 [91 Cal.Rptr. 501, 477 P.2d 733]; *People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462 at p. 468 [89 Cal.Rptr. 290]). Therefore, we decline to consider the cause moot and proceed to adjudicate the issues on their merits.

■ Without question the school authorities have the right and obligation to promulgate rules and regulations governing the conduct and operations of the Thomas Jefferson Junior High School, including those relating to student grooming and dress, and the pupils are required to comply with such valid directives (Cal. Const., art. IX, § 1; Ed. Code, §§ 921, 925, 10609; Cal. Admin. Code, tit. 5, div. 2, art. 2, §§ 300, 302). Such rules and regulations are subject, however, to being tested against constitutionally protected rights of the students.

■ It is further clear that students do have rights which are protected by the federal and California state Constitutions and that they do not

shed them at the schoolhouse gate (*Tinker* v. *Des Moines Independent Com. Sch. Dist.* (1969) 393 U.S. 503, 506 [21 L.Ed.2d 731, 737, 89 S.Ct. 733, 736]). However, it must be recognized that a student may be subject to far more stringent regulations than an adult outside a school environment due to his immaturity and status as a student in a school environment where disciplinary and health problems and considerations relating to safety of minors take on special significance. ". . . where there is an invasion of protected freedoms 'the power of the state to control the conduct of children reaches beyond the scope of its authority over adults. . . .' " (*Ginsberg* v. *State of New York* (1968) 390 U.S. 629, 638 [20 L.Ed.2d 195, 203, 88 S.Ct. 1274, 1280]; *Akin* v. *Board of Education of Riverside etc. Dist.* (1968) 262 Cal.App.2d 161, 166 [68 Cal.Rptr. 557].) We specifically reject appellant's contention that a student is in the same position as an adult not in a school environment. The courts have universally recognized this difference, including those situations where First Amendment rights admittedly are involved. (*Tinker* v. *Des Moines Independent Com. Sch. Dist., supra,* 393 U.S. at p. 507 [21 L.Ed.2d at p. 738, 89 S.Ct. at p. 737]; *L.A. Teachers Union* v. *L.A. City Bd. of Ed.* (1969) 71 Cal.2d 551, 558 [78 Cal.Rptr. 523, 455 P.2d 827].)

The responsibility for and the problems involved in the operation of our school system are primarily ones of educational, social and political philosophy committed to the state Legislature, the Executive department of the state and the local school boards by the Tenth Amendment to the United States Constitution and article IX of our state Constitution. ■ "By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." (*Epperson* v. *Arkansas* (1968) 393 U.S. 97, 104 [21 L.Ed. 2d 228, 234, 89 S.Ct. 266, 270].)

In approaching this subject, it should be recognized that, by and large, school administrators and personnel are professionally trained individuals, who are competent and dedicated experts in the field of education, which is something the courts are not. In the absence of very clear abuse of their power and authority bordering on capriciousness, arbitrariness or bad faith and involving the violation of statutory mandates or clear constitutional proscriptions, the courts should let stand their decisions as to what is required and not required in the day to day administration of the affairs of the schools. A court may disagree with the judgment of school personnel, but such disapproval provides no license or authorization to usurp their authority, substitute the court's judgment for that of the administrators, or take over the operation of their schools.

In *Corley* v. *Daunhauer* (E.D. Ark 1970) 312 F.Supp. 811, 816, the court appropriately remarked: "Reasonable restrictions on students in the fields of conduct, dress, and appearance are desirable if the schools are to operate effectively and efficiently. That is necessarily so because learning for many people is a discipline rather than a pleasure, and if it is to be practiced successfully, the practice must be carried out in dignified and orderly surroundings. Public school students, particularly those at the elementary and junior high school levels, are still immature, some of them are children of tender years. They are excitable and prone to be distracted from their tasks. Whatever may be thought about conformity in general, it seems clear that reasonable conformity to established norms of dress and appearance contributes to orderly administration of classrooms, and that uncontrolled individuality of appearance tends to disrupt it. That has been the uniform experience of public school teachers and administrators for years, and that is why many of them have an almost reflexive tendency to move against personal oddities or eccentricities in the dress or appearance of individual students."

Basic to this controversy is a determination if hair style is a right akin to free speech protected by the "preferred position" rationale of the First Amendment to the United States Constitution,[1] thus subjecting any regulation interfering therewith to "special scrutiny" and placing a heavier burden upon the state to justify any interference with such right (*West Virginia State Board of Education* v. *Barnette* (1943) 319 U.S. 624, 639 [87 L.Ed. 1628, 1638, 63 S.Ct. 1178, 1186, 147 A.L.R. 674]; *Tinker* v. *Des Moines Independent Com. Sch. Dist., supra,* 393 U.S. 503, 509 [21 L.Ed.2d 731, 739, 89 S.Ct. 733, 738]; *L.A. Teachers Union* v. *L.A. City Bd. of Ed., supra,* 71 Cal.2d 551, 566); or if the protection is to be found within the group of ill-defined but numerous rights under the "liberty" assurance of the Fourteenth Amendment. If the latter, the preferred position status of the First Amendment right of free speech does not apply.[2]

The mantle of protection under the First Amendment is described in the case of *West Virginia State Board of Education* v. *Barnette, supra,* 319

---

[1]A provision substantially identical to the First Amendment is found in article I, section 9, of the California Constitution.

[2]As has been pointed out in several of the cases, some litigants have taken the shotgun approach asserting claims to protection under the Fourth, Eighth, Ninth and Tenth Amendments, as well as the First and Fourteenth. In *King* v. *Saddleback Junior College District* (9th Cir. 1971) 445 F.2d 932, 938, the court, in referring to this approach, states: "No doubt their confusion is fostered by the tenuous nature of the right asserted"; and in the recent case of *Freeman* v. *Flake* (10th Cir. 1971) 448 F.2d 258 the court opines: "The hodgepodge reference to many provisions of the Bill of Rights and the Fourteenth Amendment shows uncertainty as to the existence of any federally protected right." (P. 260.)

U.S. at page 639 [87 L.Ed. at page 1638, 63 S.Ct. at page 1186]: "The right of a State to regulate, for example, a public utility may well include, so far as the due process test is concerned, power to impose all of the restrictions which a legislature may have a 'rational basis' for adopting. But freedoms of speech and of press, of assembly, and of worship may not be infringed on such slender grounds. They are susceptible of restriction only to prevent grave and immediate danger to interests which the state may lawfully protect."

First Amendment protection places the burden on the Board of Education to justify the constitutional invasion by "facts which might reasonably have led [them] to forecast substantial disruption of or material interference with school activities, . . ." (*Tinker* v. *Des Moines Independent Com. Sch. Dist., supra,* 393 U.S. at p. 514 [21 L.Ed.2d at p. 742, 89 S.Ct. at p. 740]; *L.A. Teachers Union* v. *L.A. City Bd. of Ed., supra,* 71 Cal.2d at p. 559) and the test when First Amendment rights are involved is: " 'In each case [courts] must ask whether the gravity of the "evil," discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger.' " (*Dennis* v. *United States* (1950) 341 U.S. 494, 510 [95 L.Ed. 1137, 1153, 71 S.Ct. 857, 868.)

Lastly, many current decisions indicate that if First Amendment rights are involved, the court will give little weight to expert opinion testimony expressing fears of disruption, disturbance, divisiveness, and interference with the educational process where those opinions are not based upon actual incidents (*Tinker* v. *Des Moines Independent Com. Sch. Dist., supra,* 393 U.S. at p. 509 [21 L.Ed.2d at p. 739, 89 S.Ct. at p. 738]; *L.A. Teachers Union* v. *L.A. City Bd. of Ed., supra,* 71 Cal.2d at pp. 563-564; *Finot* v. *Pasadena City Bd. of Education* (1967) 250 Cal.App.2d 189, 200-202 [58 Cal.Rptr. 520]).

The "liberty" provision of the due process clause in the Fourteenth Amendment[3] has been broadly construed to constrict the governmental power of the state in its regulation of many different kinds of activities, including "the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men" (*Meyer* v. *Nebraska* (1923) 262 U.S. 390, 399 [67 L.Ed. 1042, 1045, 43 S.Ct. 625, 626]), and to travel, choose what one eats, wears or reads (*Kent* v. *Dulles* (1958) 357 U.S. 116, 125-127

---

[3]A provision substantially identical to the "liberty" clause of the Fourteenth Amendment is found in article I, section 13, of the California Constitution.

[2 L.Ed.2d 1204, 1210-1211, 78 S.Ct. 1113, 1118-1119]). A number of federal decisions have placed the constitutional protection of students against hair regulations on this ground rather than within the ambit of the First Amendment. Among such decisions are *King* v. *Saddleback Junior College District*[4] (9th Cir. 1971) 445 F.2d 932, 937-938; *Jackson* v. *Dorrier* (6th Cir. 1970) 424 F.2d 213, 217; *Jeffers* v. *Yuba City Unified School District* (E.D.Cal. 1970) 319 F.Supp. 368, 371-372; *Brick* v. *Board of Education, Sch. Dist. No. 1, Denver, Colo.* (D. Colo. 1969) 305 F.Supp. 1316, 1320; *Davis* v. *Firment* (E.D. La. 1967) 269 F.Supp. 524, 527.

The Ninth Circuit, in the *King* case, was careful to point out that the protected right to liberty here involved can't be analogized to the right of privacy referred to in *Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678], and like cases, in which case the right of the state to invade the marital privacy was proscribed as an undue intrusion. As stated by the Ninth Circuit in *King* at page 938: "The conduct to be regulated here is not conduct found in the privacy of the home but in public educational institutions where individual liberties cannot be left completely uncontrolled to clash with similarly asserted liberties of several thousand others." (Fn. omitted.) (See also *Jackson* v. *Dorrier, supra,* 424 F.2d 213, 218; *Jeffers* v. *Yuba City Unified School District, supra,* 319 F.Supp. 368, 371.)

*Tinker* v. *Des Moines Independent Com. Sch. Dist., supra,* 393 U.S. 503, which is frequently cited in the hair regulation cases, involved students who were wearing black arm bands during school classes in protest of the Viet Nam War. The arm bands were an acknowledged symbol of expression in protest of the war and fell within the protection of the First Amendment. The Supreme Court quite clearly excepted hair regulation cases from the same protection when it stated in *Tinker,* at pages 507-508 [21 L.Ed.2d at pages 737-739, 89 S.Ct. at page 737]: "The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment. [Citations.] It does not concern aggressive, disruptive action or even group demonstrations. Our problem involved direct, primary First Amendment rights akin to 'pure speech.' "[5]

---

[4]Consolidated with *Olff* v. *East Side Union High School District* on appeal and disposed of in the same opinion.

[5]The Tenth Circuit, in a case filed September 28, 1971 (*Freeman* v. *Flake* (10th Cir. 1971) 448 F.2d 258) relied heavily on this statement from the *Tinker* case in holding that: "Complaints which are based on nothing more than school regulations of length of a male student's hair do not 'directly and sharply implicate basic constitu-

██ We agree with that line of authority which holds hair style, without more, is not per se an expression of speech, symbolic or pure, within the protection of the First Amendment. We further agree with the cases which hold that these activities are protected by the "liberty" umbrella of the Fourteenth Amendment. By a parity of reasoning they are likewise protected by the equivalent provisions of the California Constitution contained in article I, section 13.

At most, hair style is an indefinite and vague expression of personality, individuality or of an idiosyncrasy much like the color or style of clothes or deportment. Such activity is not intended to be nor is it interpreted by the viewer to be an expression of any definitive philosophical, social or political point of view. If these types of activity were held to be protected by the First Amendment, the heavy burden placed on the school authorities by that amendment to justify the regulation would render the schools virtually helpless to regulate, control or prohibit every conceivable type of bizarre, grotesque, freakish and outlandish dress and hair style. They would have a difficult time, if they could prohibit at all, such things as bare chested males, barefooted students and see-through blouses. The testimony of the professional administrators and educators in the case at bench supports the conclusion that lack of controls in these areas causes a deterioration in the educational atmosphere which is conducive and necessary to learning. The professional opinions of these persons should be highly regarded. The school authorities should not have to meet the heavy burden cast on them by the proscripitons of the freedom of speech provisions of the First Amendment in order to regulate such activity and conduct. We are in agreement with the Supreme Court when it observed in *United States* v. *O'Brien* (1968) 391 U.S. 367, 376 [20 L.Ed.2d 672, 679, 88 S.Ct. 1673, 1678]: "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." (See *Jackson* v. *Dorrier, supra,* 424 F.2d 213; *Jeffers* v. *Yuba City Unified School District, supra,* 319 F.Supp. 368; *King* v. *Saddleback Junior College District, supra,* 445 F.2d 932; *Freeman* v. *Flake* (10th Cir. 1971) 448 F.2d 258; Cf. *Myers* v. *Arcata etc. School Dist.* (1969) 269 Cal.App.2d 549

---

tional values' and are not cognizable in the federal courts. . . ." The court said that the United States Constitution does not impose on federal courts the duty and responsibility of supervising the length of students' hair and ordered dismissal of cases arising in the federal courts of Utah, New Mexico and Colorado.

See also the late Justice Black's comment, sitting as Circuit Justice for the Fifth Circuit, to substantially the same effect concerning the involvement of the federal courts in student hair style cases in *Karr* v. *Schmidt* (1971) 401 U.S. 1201 [27 L.Ed.2d 797, 91 S.Ct. 592].

[75 Cal.Rptr. 68]; *Akin* v. *Board of Education of Riverside etc. Dist.* (1968) 262 Cal.App.2d 161 [68 Cal.Rptr. 557]; and *Finot* v. *Pasadena City Bd. of Education, supra,* 250 Cal.App.2d 189.)

█ Because the protection is to be found under the Fourteenth rather than the First Amendment, in the absence of a clear violation of the constitutional right, the regulation is presumed valid and the burden is upon those who assail it to prove its invalidity (*Jorgensen* v. *Cranston* (1962) 211 Cal. App.2d 292, 296 [27 Cal.Rptr. 297]; *Knudsen Creamery Co.* v. *Brock* (1951) 37 Cal.2d 485, 494-495 [234 P.2d 26]; *Jeffers* v. *Yuba City Unified School District, supra,* 319 F.Supp. 368, 372; *Brownlee* v. *Bradley County Tennessee Board of Ed.* (E.D. Tenn. 1970) 311 F.Supp. 1360, 1365; *King* v. *Saddleback Junior College District, supra,* 445 F.2d 932, 939) and the regulation need only be justified by some reasonable relationship between the legitimate concerns of the school administration relating to the educational process and controlling the length and style of male hair (*King* v. *Saddleback Junior College District, supra,* 445 F.2d 932, 939; *Jeffers* v. *Yuba City Unified School District, supra,* 319 F.Supp. 368, 372; *Farrell* v. *Smith* (S.D. Me. 1970) 310 F.Supp. 732, 737; *Gfell* v. *Rickelman* (6th Cir. 1971) 441 F.2d 444; *Stevenson* v. *Wheeler County Board of Education* (S.D. Ga. 1969) 306 F.Supp. 97, 101; *Jackson* v. *Dorrier, supra,* 424 F.2d 213; *Brick* v. *Board of Education, Sch. Dist. No. 1, Denver, Colo., supra,* 305 F.Supp. 1316, 1320; *Richards* v. *Thurston* (1st Cir. 1970) 424 F.2d 1281, 1284; *Brownlee* v. *Bradley County Tennessee Board of Education, supra,* 311 F.Supp. 1360, 1365).

█ Measured by these standards, the evidence in this case clearly supports the judgment, including the recitation therein ". . . that there was and is substantial justification for the adoption and enforcement of said hair regulation; to wit: strong evidence that the wearing of long hair by male pupils in schools of the Madera Unified School District has and does substantially disrupt and interefere with the proper and orderly conduct of the educational processes, has a prejudicial and adverse effect on the academic atmosphere and decorum of the classroom, causes divisiveness and hostility among pupils and presents health and safety hazards.

"That said hair regulation is reasonable and rational and reasonably relates to and serves to enhance the educational function and the health and safety of the pupils of said school district; that the public benefits thereby produced outweigh the consequent impairment of the male student's constitutional rights and there are no alternatives less subversive of those rights."

Because findings were waived, it is presumed that every essential fact

was found by the trial court to uphold the judgment (*Block* v. *Laboratory Procedures, Inc.* (1970) 8 Cal.App.3d 1042, 1045 [87 Cal.Rptr. 778]) and all conflicts are to be resolved in favor of the respondents (*Mears* v. *Mears* (1960) 180 Cal.App.2d 484, 498 [4 Cal.Rptr. 618]).

Appellant testified the only reason he wanted to wear his hair long was he thought it made him look better.

It is undisputed that there was no actual disruption nor were there any incidents caused by appellant's hair during the one day he was at school with long hair prior to his suspension.

There was extensive testimony elicited from two junior high school teachers, the superintendent and assistant superintendent of schools of the Madera Unified School District, the principal and vice principal of the Thomas Jefferson Junior High School, and the principal of the Madera Union High School concerning the effect of long hair on the educational process. The testimony from one or more of these witnesses adequately supports the conclusion that long male hair would constitute a safety hazard in the science laboratory and in shop classes and that it would be extremely difficult to enforce a regulation requiring boys to wear hair nets or caps; that if dress codes and hair style regulations could not be enforced, it could be anticipated that students would go overboard and wear all sorts of extreme costumes and arrive at school in bizarre states of appearance; one experience was testified to in a school where no hair regulation was in effect, in which students began using extreme hair coloring, such as brilliant orange, purple and greens of various shades; that long hair presents a health factor; if there was no hair regulation it would result in friction, fighting and incidents between long and short haired students; that some of these educators had experienced actual incidents of hostility between long haired and short haired students, consisting of name calling and threats to cut boys' long hair, and actual incidents of razzing, harassment and teasing; one incident was recalled where a boy refused to go swimming in a physical education class because he did not want to mess up his long hair; it was said that employers in the community insist that boys who are sent to them under work experience programs have neat and trimmed hair styles and actually have refused to take students who appear otherwise; there was testimony that there is a definite correlation between students who are inclined to wear extreme hair lengths and styles and other types of misconduct and misbehavior; and there was evidence that all of the above would cause undue disruption on the campus and in the classroom, would affect the academic and learning atmosphere, would create disciplinary problems, and would cause

confrontation from student to student and group to group and interfere with the educational process.

We do not presume to weigh this testimony or express an opinion with respect to the validity or wisdom of the conclusions expressed therein. Our authority begins and ends with a determination as to whether there is any substantial evidence in the record, contradicted or uncontradicted, which will support the findings and conclusions of the trial judge (*Primm* v. *Primm* (1956) 46 Cal.2d 690, 693 [299 P.2d 231]; *Continental Dairy Equip. Co.* v. *Lawrence* (1971) 17 Cal.App.3d 378, 382 [94 Cal.Rptr. 887]).

Appellant's additional contentions that the regulation violates equal protection and is unconstitutionally over-broad are without merit.

The equal protection argument was raised and disposed of in *King* v. *Saddleback Junior College District, supra,* 445 F.2d 932, wherein the court stated at page 939: "There was no evidence of racial discrimination or that the regulation in either case was applied in other than in an even-handed manner, nor was there any evidence of unequal protection other than the assertion that boys were treated differently than girls; *i.e.,* girls could have long hair and boys could not. We do not consider the latter difference in treatment or classification as creating any substantial constitutional question." The only case we have been able to find to the contrary is *Crews* v. *Cloncs* (7th Cir. 1970) 432 F.2d 1259 at page 1266, which held that the distinction between boys and girls in a male hair regulation was an invidious classification, in violation of the equal protection clause. We do not agree, but are of the opinion that the *King* case is more consonant with those cases holding classifications based on sex to be constitutional. (*Goesaert* v. *Cleary* (1948) 335 U.S. 464 [93 L.Ed. 163, 69 S.Ct. 198]; *Farrell* v. *Smith, supra,* 310 F.Supp. 732, 737; *Jackson* v. *Dorrier, supra,* 424 F.2d 213, 218; *Akin* v. *Board of Education of Riverside etc. Dist., supra,* 262 Cal.App.2d 161, 169-170; and *Finot* v. *Pasadena City Bd. of Education, supra,* 250 Cal.App.2d 189, 195-196.)

The judgment is affirmed.

Gargano, J., concurred.

**STONE, P. J.**—I dissent. I agree with that part of the opinion which concludes that since the school board has the authority to establish rules governing attendance, it may invoke reasonable regulations concerning a student's dress and condition of his hair.

Admittedly, such rules of conduct circumscribe a student's freedom to

a certain extent. This is not novel; traffic laws, zoning laws, and ecologically motivated restraints likewise restrict the conduct of an individual. Such intrusions upon broadly defined constitutional freedoms are essential when the welfare and continued existence of society are weighed against the freedom of the individual to do as he pleases.

The matrix of our complex social structure is the Constitution; thus it is implicit in the Constitution itself that the rights of an individual may be impinged upon when such limitations are reasonably related to the overall purpose inherent in the Constitution. The California Supreme Court, in *Serrano* v. *Priest,* 5 Cal.3d 584 [96 Cal.Rptr. 601, 487 P.2d 1241], held education to be a social function in which the public interest is paramount. Quoting from the United States Supreme Court, the California court said, at page 606: " 'Today, education is perhaps the most important function of state and local governments. . . .' " (*Brown* v. *Board of Education,* 347 U.S. 483, 493 [98 L.Ed. 873, 880, 74 S.Ct. 686, 38 A.L.R.2d 1180].)

This does not mean, of course, that because the public interest in education transcends the unbridled liberty of the individual attending school, the governing board of a school has plenary power to unreasonably regulate student conduct. To justify restriction of a constitutional right of an individual student, the regulation must be reasonably related to the public function involved. That is to say, the regulation itself must be "reasonable," as that term is used in a constitutional sense.

This brings us to the critical question in the case, whether the regulation here was reasonable in relation to the approved objective; did the school board exceed its authority by promulgating this particular regulation? I find the question moot. The regulation was changed subsequent to the filing of this action; it is no longer in existence and its only relevancy would be to appellant herein. As to appellant, he complied with the regulation and was promoted at the end of the year. He cites no special damage for us to consider. The opinion states that appellant was suspended from school until he complied, but such a disciplinary mark on a man's record is innocuous—I hope. To me it comes within the legal classification *"de minimus non curat lex."*

I would dismiss the appeal as moot.

A petition for a rehearing was denied December 15, 1971, and appellant's petition for a hearing by the Supreme Court was denied January 13, 1972. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.