Steven F. SEAL, a minor by his mother and next friend, Ruth C. Seal, et al., Plaintiffs,

v.

Byron MERTZ, as President of the Board of Education of the Shikellamy School District, et al., Defendants.

Civ. A. No. 71–423.

United States District Court, M. D. Pennsylvania.

Feb. 22, 1972.

Irvin Graybill, Jr., Middleburg, Pa., for plaintiffs.

Sidney Apfelbaum, Robert Diehl, Sunbury, Pa., for defendants.

## OPINION

MUIR, District Judge.

### I. FINDINGS OF FACT

1. The minor Plaintiffs in this action, aged 11 to 17, are enrolled in the schools of the Shikellamy School District.

2. Defendants named in this action are all administrative officials in the Shikellamy School District.

3. On the first day of school in the fall of 1971, each student at the Shikellamy Senior High School was given a handbook containing the following regulations regarding male hair styles:

*"Dress Guidelines*

1. *Hair Length*

A. Bangs should be styled so as not to cover the eyes.

B. Sideburns should not extend below the bottom of the earlobe.

C. Hair should be trimmed so as not to rest on the ears or on the collar.

D. No beards or mustaches will be allowed."

(Defendants' Exhibit #5; Defendants' Proposed Findings of Fact #8.)

4. These regulations are approximately the same as those in force the previous year. (1 NT 189)

5. These regulations were promulgated by the School Administration with the concurrence of the student council, not by the Shikellamy School Board. (1 NT 147)

6. On the first day of school in September, 1971, about forty male students were given excused absences and directed to get their hair cut to comply with the hair regulations. (1 NT 191)

7. Most of these students returned to classes the next day after having had their hair cut. (1 NT 191)

8. On September 8, 1971, Plaintiffs Steven F. Seal, Barry J. Ferguson, Scott R. Stoler, Roger D. Young, and Donald A. Benninger all wore their cranial hair in violation of hair length regulation (C). (Defendants' Finding of Fact #13)

9. With the exception of Donald Benninger, these five Plaintiffs were all placed in a program euphemistically called the "tutorial assistance program" about three days after school started when they refused to comply with the regulation. (Defendants' Finding of Fact #13).

10. Plaintiff Benninger, an eleven year old student at the Middle School of the Shikellamy School District, had his hair cut when directed to do so by his Principal and when informed that he would have to go to the tutorial program in the High School if he refused. (1 NT 82–83, 118).

11. The "tutorial assistance program" was established to discipline students while keeping them in a classroom, with some instruction in basic areas, rather than complete suspension from school. (Defendants' Finding of Fact #14; 2 NT 101).

12. Students are placed in the program as the result of accumulating too many demerits, and are ordinarily assigned to the program for a period of three days. (1 NT 55).

13. A teacher with three years' experience teaching American History was in charge of the tutorial assistance program. This teacher attempted to help the students in the program with history, English, mathematics, sciences and physical education, but was not certified in the last four of these subjects. This teacher was not in a position to re-explain missed classroom discussion to these students, nor could he help them with foreign languages. As part of this program, students were not permitted to eat with the other students, had to eat in the kitchen, could not attend regular school functions, and could not avail themselves of any field or laboratory work. (1 NT 154, 156, 168, 165–166, 119–121).

14. While Plaintiff Stoler was in the tutorial assistance program in September, 1971, the English class to which he was assigned, but which he was not permitted to attend, was given a test and the same test was given to him. Prior to this test, the teacher of this class reviewed the material to be covered in the test. She also instructed the class that if Plaintiff Stoler were to ask any of them what was going to be on the test or what was covered in class, they were not to advise him, nor would she advise him either. (1 NT 21–22).

15. Because of his long hair or because his hair was in violation of the school regulations, one Plaintiff was chided by another student in a history class. This chiding was stopped immediately by the teacher and did not cause a disruption. (2 NT 82; see Defendants' Proposed Finding of Fact 23 (1)).

16. Some students in a shop class have threatened to cut other students' hair with the sharp instruments in the shop, but have not done so. (1 NT 224–225).

17. Long hair can be dangerous to a shop student if it obstructs his vision or gets caught in a machine. (1 NT 223).

18. On September 9, 1971, about 20 of the students who had been sent out to get haircuts were congregating in the school parking lot across the street from the school building, talking with counsel for the Plaintiffs. The attention of the students in several classes facing the parking lot was drawn to this gathering. (2 NT 15–17, 52)

19. Students in classes facing the parking lot are sometimes distracted by the passing of a motorcycle or bicycle. (2 NT 52).

20. At least three male students not Plaintiffs herein had hair styles in violation of the hair-length regulation from September 8, 1971, to October 4, 1971. These students were warned by the Assistant Principal that if they did not conform to the regulation they would be assigned to the tutorial assistance program, but they were not in fact so assigned, despite their failure to conform. (1 NT 38–39; 58–59; 67–68).

21. The minor Plaintiffs remained in the tutorial program until October 4, 1971, at which time a temporary restraining order enjoining enforcement of the hair style regulation issued. (1 NT 12; Background of the Court Order of November 11, 1971).

22. Changes in the hair code were approved by the student council of the Shikellamy Senior High School and by the Administrative Staff by September

28, 1971. (2 NT 106–108; Plaintiffs' Exhibit 1)

## II. DISCUSSION

The Court of Appeals for the Third Circuit has recently decided one of the burgeoning number [1] of cases in which a male public school student sues to enjoin enforcement of a regulation governing the length to which he may grow his hair. Gere v. Stanley, 453 F.2d 205 (3d Cir., 1971). In that case, Plaintiff Gere had been suspended after his "long hair caused disturbances to the extent that fellow-students approached the principal on several occasions with substantial complaints. In each case, action by the principal was required to alleviate the condition of unrest or turmoil in the school." 453 F.2d at 206). With this background, the Court found that the hair length regulation did not violate any rights which Gere might have under the Fourteenth Amendment. The Court assumed *arguendo* that the wearing of long hair in public school is a personal liberty protected by the Due Process Clause of the Fourteenth Amendment, but held that the hair length regulation was reasonable under the test of West Coast Hotel Co. v. Parrish, 300 U.S. 379, 391, 57 S.Ct. 578, 581, 81 L.Ed. 703 (1937): "[T]he liberty safeguard [by the Fourteenth Amendment] is liberty in a social organization which requires the protection of law against the evils which menace the health, safety, morals and welfare of the people. Liberty under the Constitution is thus necessarily subject to the restraints of due process, and regulation which is reasonable in relation to its subject and is adopted in the interests of the community is due process." This test in the school context was stated in Gere to be that "[i]f a particular pattern of student conduct is disruptive of the educational process, a narrow rule circumscribing the behavior is not infirm under the Constitution or the common law when sufficiently justified." (453 F.2d at 209) In *Gere*, "[t]he educational process . . . was disrupted . . . when students refused to sit near Gere in class because of the dirtiness of his hair and in the cafeteria because they were afraid that his habit of leaning down over his food, apparently dipping his hair into the food, and then throwing his hair back, would result in their being annoyed by the consequences." (453 F. 2d at 209.) In a footnote to this sentence, the Court noted that "[p]resumably, these problems were never caused by long-haired female students, so that we are not presented with a question of sex discrimination." (note 9 453 F.2d at 210.) Because of these disruptions to the educational process, the Court found the regulation reasonable.

The factual background of the present case is markedly different from that found in *Gere*. Here there had been no disruption to the educational process caused by long hair per se. (See Findings of Fact #12, 15–18). The only incident connected with long hair which approaches disruption of the educational process occurred when about twenty male students who had been sent out to get hair cuts were meeting with the attorney for the Plaintiffs in this case in the school parking lot, thus distracting some of the students in classrooms which face the parking lot. If any weight is to be given to this incident, it should be minimal since even passing motorcycles and bicycles cause the students in classrooms facing the parking lot to be distracted. However, it is my view that this incident should not be considered at all as a justification for the hair-length regulation because it never would have taken place had there not been such a regulation. As to the other incidents connected with long hair, none of these were actually disruptive of the educational process. Unlike the situation in Gere, these incidents did not lead to protests

---

1. More than fifty federal courts have dealt with the issue of school long-hair regulations and the number is likely to continue to increase since the Supreme Court has refused to hear such a case. See, e. g., Olff v. East Side Union High School District, cert. denied, 404 U.S. 1042, 92 S.Ct. 703, 30 L.Ed.2d 736.

to the principal nor require the principal to alleviate any conditions of turmoil or unrest. Aside from these incidents, Defendants have attempted to prove that the hair length regulation is justified in three separate ways. First, they contend that the regulation is desirable as a mechanism for teaching students to obey rules. (1 NT 199–202). If this rationale were accepted, the most arbitrary, discriminatory regulation or law could be justified. Second, they contend that "long hair on male students in defiance of the regulation has endangered the conduct of the normal activities which Shikellamy has had in the past which require a fairly strict form of discipline." The Court has difficulty discerning the meaning of this language. What is clear, however, is that this contention must fail because without such a regulation, there would not be this disciplinary problem, and in addition because the testimony in this regard was merely speculative (1 NT 193). Third, Defendants contend that male long hair imperils the safety and well-being of shop students. While this is a legitimate concern, it does not justify a regulation applicable to all students whether or not they take shop. A shop rule requiring use of a fillet would eliminate the hazard.[2]

■ Unlike the situation in *Gere*, violators[3] of the hair length regulation here were placed in a so-called "tutorial assistance program" instead of being suspended. In my view, this is a difference without a distinction for purposes of constitutional analysis. Any deprivation imposed to induce compliance with the regulation would permit the Plaintiffs to invoke the protection of the Fourteenth Amendment. But it cannot be gainsaid that these Plaintiffs were in fact denied substantial educational benefits here: classroom lecture and discussion, foreign language instruction, field and laboratory work, and normal association with their peers.

■■ All of the reasons offered in support of the regulation, individually or together, do not sufficiently justify it. The hair regulation is related only very minimally and marginally to its alleged primary objective, maintenance of discipline in order to foster education.[4] The regulation must fall under the test of *Gere* and *West Coast Hotel*, despite the presumption[5] which exists in favor of its validity.

■ In the discussion thus far, I have assumed that the wearing of long hair by students in public school is a "liberty" within the meaning of the Fourteenth Amendment.[6] Because the Court in *Gere* held that under the facts in that case the hair regulation there was reasonable, they did not reach this issue. (See *Gere*, note 7). Having arrived at a contrary result here, with respect to the reasonableness of the regula-

---

2. See *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231, where the Court held that at least in certain contexts, "even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved."

3. Or at least most violators—see Finding of Fact #20.

4. Although there was testimony at trial by the Acting Superintendent of Schools that the original reason for instituting a hair-length regulation was the local community's desire to prevent the spread of a movement associated with long hair, this testimony is irrelevant to a determination of whether the regulation is in fact, not in motivation, reasonably related to its subject. See, e. g., *Goesaert v. Cleary*, 335 U.S. 464, 466–467, 69 S.Ct. 198, 93 L. Ed. 163 (1948). But cf. *Abington Township School District v. Schempp*, 374 U.S. 203, 222, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963).

5. *West Coast Hotel*, supra, 300 U.S. at 398, 57 S.Ct. 578, 81 L.Ed. 703, quoting from *Nebbia v. New York*, 291 U.S. 502, 538, 54 S.Ct. 505, 78 L.Ed. 940.

6. Since *Gere* specifically held that jurisdiction under 28 U.S.C. § 1343(3) exists and that abstention is not justified in this type of case, these issues need not be discussed here.

tion, I now hold that the wearing of long hair by students in public school is a "liberty" within the meaning of the Fourteenth Amendment.[7] It is my view that the wearing of long hair by *anyone* is a "liberty" within the meaning of the Fourteenth Amendment. As the Court of Appeals for the First Circuit pointed out in Richards v. Thurston, 424 F.2d 1281, 1285 (1st Cir. 1970), to hold to the contrary is to suggest that a state might require a conventional coiffure of all its citizens.[8] In Bolling v. Sharpe, 347 U.S. 497, 499–500, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954), a unanimous Court stated that:

> "Although the Court has not assumed to define 'liberty' with any great precision, that term is not confined to mere freedom from bodily restraint. Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective."

Furthermore, the right to control the length and style of one's hair seems to me included in the fundamental liberty of the individual to govern his body. See Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Everyone has this right irrespective of whether they think long hair makes their appearance more attractive or whether their long hair is part of their rebellion against the prevailing social ethic.

■■■■■ There remains the further issue whether long hair is less of a liberty for school children than it is for adults. Preliminarily, I note that "[t]he child is not the mere creature of the State." Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925). See also In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The Court in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 511, 89 S.Ct. 733, 739, 21 L.Ed.2d 731 (1969), stated that:

> "In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students. Students in school as well as out of school are 'persons' under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State."

See also West Virginia State Board of Education v. Barnette, 319 U.S. 624, 637, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Keyishian v. Board of Regents, 385 U.S. 589, 603, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). As the quoted passage indicates, the holding in *Tinker* is based on the Due Process Clause of the Fourteenth Amendment. *Tinker* holds that a student, as a "person" under the Fourteenth Amendment, has a right to certain "liberty"; in that case, to freedom of speech. Essentially then, it appears that a public school pupil has the same right to "liberty" as an adult under the Fourteenth Amendment except that the state may reasonably regulate the liberty of the public school student if the exercise of that liberty interferes with the legitimate goals of public education. Hence, it was appropriate to apply the test of *West Coast Hotel Co.* to the facts of this case and to enquire whether the hair regula-

---

7. Furthermore, classification of students by the length of their hair would appear to violate the Equal Protection Clause of the Fourteenth Amendment unless a reasonable basis for the classification can be discerned. See, e. g., Levy v. Louisiana, 391 U.S. 68, 71, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968).

8. Cases in addition to *Richards* which hold that hair length is a liberty under the Fourteenth Amendment include Martin v. Davison, 322 F.Supp. 318, 322 (W.D.Pa. 1971); Gere v. Stanley, 320 F.Supp. 852, 855 (M.D.Pa.1970); Breen v. Kahl, 419 F.2d 1034, 1036 (7th Cir. 1969).

tion[9] was justified by harm to education in the Shikellamy School System.

Having reached the conclusion that the regulation of hair length by the Administrators of the Shikellamy School System is not justified by any rational policy based on their responsibility to educate, it is not necessary to reach Plaintiffs' First Amendment and Fourteenth Amendment Equal Protection arguments.

### III. CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this suit.

2. The right of the minor Plaintiffs to wear long hair is protected by the Due Process Clause of the Fourteenth Amendment to the Federal Constitution.

3. To be consistent with the Fourteenth Amendment, regulation of hair length by school authorities must bear a reasonable relationship to the educational function.

4. The regulation of male hair length in this case is not justified by disruption or other interference with the educational process in the Shikellamy School District.

5. An injunction restraining Defendants from enforcing the hair length regulation of September 8, 1971, against the minor Plaintiffs is appropriate.

6. For the reasons stated in the Order of this Court filed December 8, 1971, Plaintiffs are not entitled to sue as representatives of the class of individuals similarly situated in the Shikellamy School District.

An Order in accord with this Opinion will be filed concurrently.

---

9. Although not raised in their answer, Defendants at trial proved that modifications to the hair regulation which is the subject of this suit (see Finding of Fact #3) were approved by the administrative staff and the student council. There is no proof, however, that the modifications have ever been put into effect by whatever process this requires or that notice of the modifications was given to the Plaintiffs. Thus, Defendants have failed to satisfy their burden of proving mootness of the regulation with which this opinion deals. Accordingly, the modifications are not properly before me.