459 F.2d 339
 James Robert STULL, a minor, by his mother, Julie Stull
Macleod, and his stepfather George Stuart MacLeod,
et al., Appellants,
v.
SCHOOL BOARD OF the WESTERN BEAVER JUNIOR-SENIOR HIGH SCHOOL et al.
 No. 71-1674.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 12, 1971.
Decided April 13, 1972.
 
 1
 Hymen Diamond, Monroeville, Pa., for appellants.
 
 
 2
 Robert C. Reed, Wallover, Scalera, Reed & Steff, Beaver, Pa., for appellees.
 
 
 3
 Before VAN DUSEN and JAMES ROSEN, Circuit Judges and EDWARD R. BECKER, District Judge.
 
 OPINION OF THE COURT
 
 4
 EDWARD R. BECKER, District Judge.
 
 I.
 
 5
 The School Board of the Western Beaver Junior-Senior High School (Board), like so many of its counterparts throughout the land, has promulgated a dress code which, inter alia, proscribes the wearing of hair covering the ears and below the collar line. James Robert Stull (James), a fifteen year old school-boy, like so many of his peers, has adopted a hairstyle which offends the cited provisions of the code. As is shown by the record, including the testimony offered by plaintiffs and defendants in the District Court, James is neat and well-groomed, and has been neither the subject nor object of disruptive incidents at the school. However, his refusal to respond to directives to comply with the code has set James and the Board upon a collision course which led to James' suspension from school and this Civil Rights Act (42 U.S.C. Sec. 1983) lawsuit, alleging a violation of James' federally protected constitutional rights and seeking injunctive relief.[1] Without making findings of fact, the District Judge dismissed, on the grounds that the paramount interest in prescribing rules and regulations for the maintenance of order and discipline in the public school system lay with the state, and that the review of such rules and regulations was a function of the state rather than the federal courts.[2] This appeal followed.
 
 
 6
 This is the second time this Court has been called upon to join the continually burgeoning roster of federal courts which have been called upon to enter, in Judge Coffin's rather apt metaphor, the "thicket"[3] of cases involving the confrontation between youth and the school administrators over male hairstyles. The first occasion was the case of Gere v. Stanley, 453 F.2d 205 (1971), where a student challenged a regulation similar to that now under attack.[4] In September of 1969, a dress code, including a vaguely worded hair regulation, was promulgated by the Principal of the Blue Ridge High School in New Milford, Pa. for the new school year. It was promulgated at the request of faculty members who had complained "that style changes were causing disruptions and distractions in the classroom." Gere grew shoulder length hair and a goatee in clear violation of the rule and was the source of disruption at the school. Students refused to sit near him in the cafeteria because his hair was very dirty and on several occasions groups of students approached the principal about the unhealthy condition of his hair. Gere was suspended in March of 1970 and thereafter filed suit seeking to enjoin the enforcement of the regulation; he returned to class pending disposition of the case.
 
 
 7
 During the summer of 1970 a new code was adopted by the faculty, administrative staff and student council which contained a slightly different hair regulation. When Gere returned to school, he was suspended because his hair was in violation of the new code. He did not return, but filed a second suit challenging the new hair regulations. The district court consolidated the actions and held that even though the length of one's hair was a protected right under the Fourteenth Amendment, in view of the interference with the educational process the regulation was reasonable and necessary.
 
 
 8
 On appeal, this Court found that the district court had jurisdiction (see discussion, supra n. 1). It then assumed arguendo that Gere had a constitutional right to choose his hairstyle[5] and proceeded to determine the validity of the regulation in light of the test laid down by Mr. Chief Justice Hughes in West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937), which requires the Court to assess the reasonableness of the regulation in relation to its subject, to reconcile the right sought to be protected with the legitimate interests of the community. The Court balanced the right asserted against the authority of the school board to "insure an atmosphere conducive to educational purposes", and found the regulation justified because, in light of the evidence of disruption of the educative process caused by Gere, the regulation was not an arbitrary exercise of the school board's power. However, the Court noted at footnote 11:
 
 
 9
 "We express no opinion regarding a case where a school board bans long hair without a background of disturbances of this nature. In such a case, the school board may or may not be able to justify a regulation applicable to its schools by presenting expert testimony that long hair would in some way be detrimental to the educational process in the school district in question.";
 
 
 10
 "Until such time as we are faced squarely with the underlying constitutional issue, i. e., whether a school board, without justifying the rule, may regulate the length of hair worn by male students, we feel that both logic and precedent require the application of the balancing test set forth in the text."
 
 
 11
 The record in this case requires that we squarely face the underlying constitutional issue. As of our latest count, we are the ninth of the circuit courts to do so.
 
 
 12
 In its opinion in Massie v. Henry, 455 F.2d 779, filed February 2, 1972, the Fourth Circuit joined the First, Seventh, and Eighth Circuits in holding regulations limiting the length of hair invalid, at least in the absence of persuasive reason and persuasive proof to support their promulgation and enforcement.[6] The Fifth, Sixth, Ninth and Tenth Circuits, on the other hand, have refused to interfere with school regulations that prohibit long hairstyles, essentially on the basis that the right to select the length of one's hair is too insubstantial to constitute a right protected by the federal Constitution and therefore to warrant federal court consideration.[7] On six occasions now the Supreme Court has denied certiorari,[8] and on three of these strong dissents have been filed.[9]
 
 
 13
 We are not insensitive to the force of the proposition that it is more desirable that the matters here involved be left to the local authorities.[10] On the other hand, there can be no doubt that the regulation under attack inhibits the student's personal liberty to fashion his own appearance and life style. The question does not present itself in a vacuum, but rather in the context of specific facts. Accordingly, we will first turn to an exegesis of the present record.
 
 II.
 
 14
 The hairstyle code which is in question in this case appears in the school's Student Handbook which is distributed to every student. It reads as follows:
 
 
 15
 "6. Because of health and safety factors, hair styles that either impair vision or contradict basic cleanliness are prohibited. Basic guide lines relative to hair styles are:
 
 
 16
 a. The ears shall not be covered.
 
 
 17
 b. Hair at the back of the head shall not fall below the top of the dress shirt collar.
 
 
 18
 c. Sideburns shall not extend below the bottom of the ear.
 
 
 19
 d. The top of the eyebrow shall be the lower limit for the forehead."
 
 
 20
 We have examined James' photograph. He is a clean-cut youngster, and his hair is neatly cut and combed. The record establishes that he washes and combs out his hair about twice a week. His hair, however, does extend below the collar line and over his ears. Accordingly, James is in violation of the code which was drafted in the spring and summer of 1970 by a committee composed of the principal, members of the faculty and student representatives, and was adopted by the Board prior to the commencement of the school year.
 
 
 21
 At the beginning of the school term, James was requested to cut his hair to conform to the code. With the consent of his parents, he refused, was then suspended but readmitted two days later after compliance. James asserts that at various times thereafter he was "harassed" by the principal, Michael Arbutina, and various teachers because of his long hair. This suit was then filed on October 20, 1970.
 
 
 22
 In late January 1971, James was again suspended on account of his hair length, but was readmitted after he cut his hair. He let his hair grow again, and on April 5, 1971, all parents of students whose hair was in violation of the school code were notified by letter from the principal that if their children's hair did not comply with the hair code, they would not be admitted to class. James refused to comply and was suspended on April 10, 1971 and did not return to school for the remainder of the school year.[11]
 
 
 23
 At the District Court's final hearing, the Board offered testimony to justify the hair code. The then principal, Arbutina, testified that as a result of his experience in education, he felt that such regulations were "helpful to maintain a proper academic atmosphere." He conceded, however, that there were no disciplinary problems at Western Beaver caused by students with long hair. In fact, there is no evidence at all in the record that James' hair ever caused any disturbances or disruptions in the educational process at Western Beaver, or that James was subject to abuse or violence or was himself a disciplinary problem. Neither were there any complaints about his cleanliness or tidiness. It was conceded at the argument that his appearance was scrubbed and neat and pleasant indeed. Moreover, and most significant in light of the Gere opinion, there is no evidence in the record of any problems which preceded and thereby precipitated the adoption of the code.
 
 
 24
 Joseph Kadalik, Vice-President of the Board, testified that the hair code was adopted because it was "conducive to good education." The only specific justification he could give was that long hair constituted a safety hazard in shop classes. There was also testimony from two shop teachers on the point. Jacques La Perriere, the metal shop instructor, testified that he felt that long hair was a hazard, since there was a danger of it being caught in moving parts of machinery. He also felt that particular hazards were created by the welding equipment when used by a person with long hair. He noted that clear vision was critical and that hair in the eyes would create a dangerous condition; also, he noted the dangerous conditions caused by the large number of sparks which might burn exposed hair. La Perriere testified that James had been in his class and that he had paid special attention to him due to his feeling that his long hair presented a safety hazard. Mr. Rowe, the wood shop instructor, testified that he had advised the committee which drafted the dress code that long hair would be a hazard in his shop.
 
 
 25
 On cross examination, La Perriere conceded that he had never requested James to tie his hair up or take other precautions for his personal safety. Both instructors (La Perriere and Rowe) conceded that they did not attempt to keep long haired males out of their classes. It was also developed that the shop courses were elective and that females were permitted to take specially designed shop courses. The District Court, however, made no attempt to evaluate the testimony; more specifically, it made no findings as to credibility of the contention that long hair constitutes a safety hazard in the shops, or, as to whether any regulation of long hair in shop courses would be reasonable in light thereof.
 
 III.
 
 26
 James has come before us asserting his right to control his own personal appearance and lifestyle, and to develop, as it were, his own individuality. The Board's dress code restricts that right in a manner which extends beyond school hours, for his hair, long or short, is with him twenty-four hours a day, seven days a week, twelve months a year. The right asserted is directly related to one's personal liberty. As the Supreme Court said some eighty years ago, when the prevalent hairstyle resembled that which is under attack today:
 
 
 27
 "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge Cooley: 'The right to one's person may be said to be a right of complete immunity; to be let alone."' Union Pacific Railway Co. v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891).
 
 
 28
 However, the principal question raised by the courts which have refused to interfere with school regulations prohibiting long hairstyles is not whether the right to control one's hairstyle is a function of one's personal liberty, but whether that right is sufficiently substantial to be accorded constitutional protection. On this point, we note the thoughts expressed by Judge Lay, concurring, in Bishop v. Colaw, 450 F.2d 1069, 1078 (8th Cir. 1971):
 
 
 29
 "Nevertheless, a state's invasion into the personal rights and liberty of an individual, of whatever age or description, should present a justiciable issue worthy of federal review. There is little doubt that this regulation seeks to restrict a young person's personal liberty to mold his own lifestyle through his personal appearance. To say that the issue is not 'substantial' turns a deaf ear to the basic values of individual privacy and the freedom to caricature one's own image. Our institutions do not rely on submerging individual personality in order to create an 'idealized' citizen. Cf. Meyer v. Nebraska, 262 U.S. 390, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). . ."
 
 
 30
 James' counsel has suggested three principal bases for the claim of a constitutionally protected right. One of them may be disposed of quickly. It is asserted that the action of the school authorities, without adequate justification, disturbs the "delicately balanced relationship of members of a family" and interferes with the rights of parents in rearing a child to "decide what hair style their son should wear." Whether or not the regulations violate a constitutional right of James' parents to govern the raising of their family or whether or not the Fourteenth Amendment forbids state intrusion into the parent-child relationship is not before us here, for there is no indication in the record that James' parents were responsible for his choice of hairstyle. The decision to wear long hair was James'. While the parents have arduously supported his right to govern his personal appearance,[12] the record fails to establish any direct invasion of their rights. Moreover, James' own rights are sufficient to support his claim within the language of Tinker v. Des Moines Ind. Comm. School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969):
 
 
 31
 "Students in school as well as out of school are 'persons' under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State."
 
 
 32
 Eschewing two grounds often cited in other cases in support of this type of claim,[13] James has settled upon the assertions that his rights are founded upon the due process clause of the Fourteenth Amendment, and upon the Ninth Amendment (although the Ninth Amendment claim was not stressed on this appeal, it is pleaded in the complaint). There are circuit court cases supporting both theories, and it is fitting that we review them before enunciating our own view.
 
 
 33
 In Richards v. Thurston, 424 F.2d 1281 (1970), the First Circuit found that the right of students to determine their personal appearance is "implicit in the 'liberty' assurance of the Due Process Clause." The Court said:
 
 
 34
 "The idea that there are substantive rights protected by the 'liberty' assurance of the Due Process Clause is almost too well established to require discussion. Many of the cases have involved rights expressly guaranteed by one or more of the first eight Amendments. But it is clear that the enumeration of certain rights in the Bill of Rights has not been construed by the Court to preclude the existence of other substantive rights implicit in the 'liberty' assurance of the Due Process Clause. . . .
 
 
 35
 We do not say that the governance of the length and style of one's hair is necessarily so fundamental as those substantive rights already found implicit in the 'liberty' assurance of the Due Process Clause, requiring a 'compelling' showing by the state before it may be impaired. Yet 'liberty' seems to us an incomplete protection if it encompasses only the right to do momentous acts, leaving the state free to interfere with those personal aspects of our lives which have no direct bearing on the ability of others to enjoy their liberty. . . . We conclude that within the commodious concept of liberty, embracing freedoms great and small, is the right to wear one's hair as he wishes." (footnotes omitted). Id. at 1284-1285.
 
 
 36
 In Breen v. Kahl, 419 F.2d 1034 (1969), the Seventh Circuit followed Richards in asserting that the right involved is an ingredient of personal freedom protected by the Constitution. However, the court, instead of limiting itself to the Richards rationale, added:
 
 
 37
 "Whether this right is designated as within the 'penumbras' of the first amendment freedom of speech, see Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), or as encompassed within the ninth amendment as an 'additional fundamental right[s] . . . which exist alongside those fundamental rights specifically mentioned in the first eight constitutional amendments' Griswold v. Connecticut, 381 U.S. at 488, 85 S. Ct. at 1684 (J. Goldberg concurring), it clearly exists and is applicable to the states through the due process clause of the fourteenth amendment." Id. at 1036.[14]
 
 
 38
 Thus, the Seventh Circuit has adopted the rationale of Griswold, which held that the Constitution, through the Ninth Amendment, recognized the existence of rights other than those specifically enumerated in the Constitution, and made them applicable to the states through the Due Process Clause of the Fourteenth Amendment.[15]
 
 
 39
 In contrast to the First and Seventh Circuits, the Eighth Circuit (in Bishop v. Colaw, supra) concluded that it was unnecessary (or perhaps it felt it to be inappropriate) to label the specific (or non-specific) source of the protected right. Reviewing the First and Seventh Circuit approaches, the court concluded that the differences were "more semantic than real," and observed that the common theme of the decisions striking down hair regulations is that:
 
 
 40
 "the Constitution guarantees rights other than those specifically enumerated, and that the rights to govern one's personal appearance is one of those guaranteed rights." Id. 450 F.2d at 1075.
 
 
 41
 We agree that the differences in the above mentioned conceptual approaches to the problem are in considerable measure semantic and that there is indeed a common theme in all of these cases. However, it is our view that the First Circuit's approach was correct; we therefore prefer to follow it and hold that the governance of the length and style of one's hair is implicit in the liberty assurance of the Due Process Clause of the Fourteenth Amendment.[16] It may well be that this formulation in effect adopts the concept of penumbral rights; yet, we are inclined to agree with the view of the Richards court that in the absence of further guidance from the Supreme Court, we ought not to expand the Ninth Amendment beyond the notions applied to the right of (marital) privacy as expressed in Griswold.
 
 IV.
 
 42
 The foregoing does not end the discussion of the constitutionality of the school dress code under attack, for it is fundamental that personal freedoms are not absolute. Accordingly, we must embark upon the same inquiry as this Court did in Gere, and assess the reasonableness of the regulation in relation to its subject, to reconcile the protected right with the legitimate interests of the community.
 
 
 43
 The results of our inquiry do not support the Board. Unlike Gere v. Stanley, supra, there is no evidence that long hair worn by James or any other student has caused disruption of any kind either before or after adoption of the code. There is no evidence in this case that long hair was hazardous to anyone's health. With the exception of safety considerations in the shop classes, when the Board's evidence is boiled down, it amounts to a contention, which has generally been rejected, that long hair is bad for the "academic atmosphere." Whether or not this phrase, uttered by the school principal, is a euphemism for an establishmentarian distaste for long hair is beside the point. The fact is that there is no evidence in this record that long hair has any effect on the academic accomplishments of James or of other "longhairs" or their classmates.
 
 
 44
 The exception which we have noted does, however, require further consideration, for the evidence which was developed with respect to the metal and wood shop classes, if credited, might well justify the enforcement of regulations pertaining to the length, or at least the management, of hair as a condition of taking the various shop courses at the school. For instance, perhaps nets or head bands could provide the requisite safety in such classes, or other measures could be adopted which are designed to assure that their legitimate purpose-safety-is accomplished, as long as they are as limited as possible so as not to overly burden the exercise of a protected right.
 
 
 45
 With the exception of the shop class situation, the school administration failed to supply persuasive reason or proof to support the promulgation and enforcement of the Board's regulation limiting the length of the hair of male students. It has demonstrated no outweighing state interest justifying the intrusion. We have before us only the facts of this case. On the basis of those facts, and in view of our discussion of the constitutional issues involved, we hold the Board's regulation, except as applied to the shop classes, invalid and its terms unenforceable. With respect to the shop class situation, however, it is inappropriate for this court to evaluate the testimony in the absence of findings by the district judge. Accordingly, we vacate the judgment of dismissal and remand the case to the District Court so that the district judge may make the findings with respect to whether the school code may be enforced with respect to the length or management of hair as a condition of taking the various shop courses. The District Court should thereupon enter judgment in conformity with those findings and with this opinion.
 
 
 
 [1]
 Part of the controversy surrounding long hair cases is the threshold question whether the federal courts even have the power to adjudicate the issue. See, e. g., Karr v. Schmidt, 401 U.S. 1201, 91 S.Ct. 592, 27 L.Ed.2d 797 (1971), opinion of Justice Black; Freeman v. Flake, 448 F.2d 258 (10th Cir. 1971); Zeller v. Donegal School District, 333 F.Supp. 413 (E.D. Pa., filed Oct. 26, 1971). This Court has addressed this question and had decided that federal courts do have jurisdiction. In Gere v. Stanley, 453 F.2d 205 (3d Cir. 1971), the Court said: ". . . without regard to the ultimate disposition on the merits, if an action is brought within the terms of 42 U.S.C. Sec. 1983, it follows that a federal court has jurisdiction to hear the case."
 
 
 [2]
 The precise constitutional basis for Judge Miller's dismissal is not entirely clear. We believe that the fairest reading of his opinion is that he has found, much as the Tenth Circuit (see infra) found in Freeman v. Flake, 448 F.2d 258 (1971), that the right to select the length of one's hair is too insubstantial to constitute a right protected by the federal Constitution and therefore to warrant federal jurisdiction. We note that in his opinion Judge Miller also spoke in terms of abstention. However, in Gere v. Stanley, 453 F.2d 205 (3d Cir. 1971), discussed infra, this Court held that the doctrine of abstention is inapplicable to this type of case
 
 
 [3]
 Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970)
 
 
 [4]
 The District Court opinion is reported at 320 F.Supp. 852 (M.D.Pa.1970)
 
 
 [5]
 A similar course has been followed in a number of other cases: Mercer v. Lothamer, 321 F.Supp. 335 (N.D.Ohio 1970); Jeffers v. Yuba City Unified School Dist., 319 F.Supp. 368 (E.D.Cal.1970); Southern v. Board of Trustees, 318 F.Supp. 355 (N.D.Tex.1970); Whitsell v. Pampa Indep. School Dist., 316 F.Supp. 852 (N.D.Tex.1970); Livingston v. Swanquist, 314 F.Supp. 1 (N.D.Ill.1970); Giangreco v. Center School Dist., 313 F. Supp. 776 (W.D.Mo.1969); Corley v. Daunhauer, 312 F.Supp. 811 (E.D.Ark. 1970); Brownlee v. Bradley County Bd. of Educ., 311 F.Supp. 1360 (E.D.Tenn. 1970); Pritchard v. Spring Branch Indep. School Dist., 308 F.Supp. 570 (S. D.Tex.1970); Brick v. Bd. of Educ., 305 F.Supp. 1316 (D.Colo.1969)
 
 
 [6]
 Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970); Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. den. 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970); Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1970); Bishop v. Colaw, 450 F.2d 1069 (8th Cir. 1971); See also the following district court cases to the same effect: Axtell v. LaPenna, 323 F.Supp. 1077 (W.D.Pa.1971); Berryman v. Hein, 329 F.Supp. 616 (D.C.Idaho 1971); Parker v. Fry, 323 F.Supp. 728 (E.D.Ark. 1970); Martin v. Davison, 322 F.Supp. 318 (W.D.Pa.1971); Watson v. Thompson, 321 F.Supp. 394 (E.D.Tex.1971); Black v. Cothren, 316 F.Supp. 468 (D. Neb.1970); Dunham v. Pulsifer, 312 F.Supp. 411 (D.Vt.1970); Cash v. Hoch, 309 F.Supp. 346 (W.D.Wisc.1970); Sims v. Colfax Community School Dist., 307 F.Supp. 485 (S.D.Iowa 1970); Miller v. Gillis, 315 F.Supp. 94 (N.D.Ill.1969); Westley v. Rossi, 305 F.Supp. 706 (D. Minn.1969). "Long hair" cases have obviously generated substantial controversy. For analysis and discussion of various cases and approaches, see Gyory, Richard, The Constitutional Rights of Public School Pupils, 40 Fordham Law Review 201 (1971); Case Note, Constitutional Law-Schools and School Districts-Prohibition of Long Hair Absent Showing of Actual Disruption Violates High School Students Constitutional Rights-Breen v. Kahl. Requirement That High School Students Shave Is Valid If Founded On Rational Basis-Stevenson v. Bd of Education, 84 Harvard L.Rev. 1702 (1971); Public Schools, Long Hair, and The Constitution, 55 Iowa L.Rev. 707 (1970); See also Unenumerated Rights-Substantive Due Process, The Ninth Amendment and John Stuart Mill, 1971 Wis.L.Rev. 922
 
 
 [7]
 Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir. 1968); Wood v. Alamo Heights Independent School District, 433 F.2d 355 (5th Cir. 1970); Davis v. Firment, 408 F.2d 1085 (5th Cir. 1969); Jackson v. Dorrier, 424 F.2d 213 (6th Cir. 1970); Gfell v. Rickelman, 441 F.2d 444 (6th Cir. 1971); King v. Saddleback Junior College, 445 F.2d 932 (9th Cir. 1971); Freeman v. Flake, 448 F.2d 258 (10th Cir. 1971). These courts have heavily emphasized that the matter is essentially one for the local authorities and the state courts
 
 
 [8]
 Olff v. East Side Union High School District, 445 F.2d 932 (9th Cir. 1971), cert. den. 404 U.S. 1042, 92 S.Ct. 703, 30 L.Ed.2d 736; Jackson v. Dorrier, 424 F.2d 213 (6th Cir.), cert. den. 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed.2d 88 (1970); Stevenson v. Bd. of Education of Wheeler County, 426 F.2d 1154 (5th Cir.), cert. den. 400 U.S. 957, 91 S.Ct. 355, 27 L. Ed.2d 265 (1970); Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. den. 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed. 2d 268 (1970); Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir.), cert. den. 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968); Freeman v. Flake, 448 F.2d 258 (10th Cir. 1971), cert. den. 405 U.S. 1032, 92 S.Ct. 1292, 31 L.Ed.2d 489 (1972)
 
 
 [9]
 Justice Douglas dissented from the denial of certiorari in Olff v. East Side Union High School District, 445 F.2d 932 (9th Cir. 1971), cert. den. 404 U.S. 1042, 92 S.Ct. 703, 30 L.Ed.2d 736 (1972); Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir.), cert. den. 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125; and Freeman v. Flake, 448 F.2d 258 (10th Cir. 1971), cert. den. 405 U.S. 1032, 92 S.Ct. 1292, 31 L.Ed.2d 489 (1972). Justice Black, as circuit justice, has expressed the view that "federal courts [do not] have constitutional power to interfere in this way with the public school system operated by the States." See Karr v. Schmidt, 401 U.S. 1201, 1202, 91 S.Ct. 592, 27 L.Ed.2d 797 (1971)
 
 
 [10]
 Cf. dissenting and concurring opinion of Judge Biggs in Gere v. Stanley, supra
 
 
 [11]
 James subsequently cut his hair to pursue his education on the advice of his counsel with the understanding that his claim to wear his hair as he desired would be litigated. This procedure was also followed in Breen v. Kahl, 419 F. 2d 1034 (7th Cir. 1969). There is no contention that James was treated differently from any other long haired student at the school
 
 
 [12]
 James' stepfather testified that he personally did not like long hair, but that he considered the question "way down on his list of priorities". James' mother testified that wearing long hair gave him more confidence and that if the parents did not object to it, (in her opinion) neither should the school
 
 
 [13]
 James has not contended that his hairstyle represents any form of expression, so that no First Amendment claim is pressed. But, cf. Dunham v. Pulsifer, 312 F.Supp. 411 (D.Vt.1970). Neither has James asserted a denial of equal protection. Cf. Crews v. Cloncs, 432 F.2d 1259, 1266 (7th Cir. 1970), holding, inter alia, that to deny male students the opportunity to obtain a public education on the basis of their hair length would be a violation of the Equal Protection Clause. See also Westley v. Rossi, 305 F.Supp. 706 (D.Minn.1969); Griffin v. Tatum, 425 F.2d 201 (5th Cir. 1970); Zachry v. Brown, 299 F.Supp. 1360 (N.D.Ala. 1967)
 
 
 [14]
 In Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1970), the court expounded upon this formulation:
 "Our holding [in Breen] rested upon the premise that the Constitution contemplated protection for additional fundamental right[s] . . . which exist alongside those fundamental rights specifically mentioned in the first eight amendments. Griswold v. Connecticut, 381 U.S. 479, 488, 85 S.Ct. 1678, 14 L.Ed.2d 510. . . ." 432 F.2d at 1263.
 
 
 [15]
 Where it is found that a right is protected either through one of the specific enumerations of the first eight amendments to the Constitution, or through the "rights retained by the people" provision of the Ninth Amendment, or through the penumbras of any of these amendments, vis-a-vis the State the protection afforded against infringement will be through the application to the states of these rights through the Fourteenth Amendment
 
 
 [16]
 This approach is intimated in the Gere decision, at footnotes 4 and 8