**Roman BLACK**

v.

**Joseph R. RIZZO, as Fire Commissioner of the City of Philadelphia, et al.**

**Civ. A. No. 72–1781.**

United States District Court, E. D. Pennsylvania.

June 8, 1973.

Benjamin Lerner and Richard L. Freeman, Jr., Philadelphia, Pa., for plaintiff.

Martin Weinberg, Philadelphia City Sol., by John M. McNally, Jr., First Deputy City Sol., Philadelphia, Pa., for defendants.

## OPINION AND ORDER

HANNUM, District Judge.

Plaintiff, a uniformed fireman of the City of Philadelphia, challenges his suspension and dismissal from the Philadelphia Fire Department on the grounds that the Fire Department Personal Appearance Regulation [1] is unconstitutional on its face and as applied to him. Plaintiff claims that the regulation impermissibly interferes with his right to wear his hair in a manner, style and length which he chooses, as guaranteed by the due process clause of the Fourteenth Amendment, and his right of freedom of expression, as guaranteed by the First and Fourteenth Amendments. Plaintiff also claims that the Regulation is void for vagueness and that the procedures used by the defendants in suspending and dismissing him violated his right to procedural due process of law and his rights under applicable state law. Finally, plaintiff claims that the evidence shows that he was in compliance with the Regulation when he was suspended, and that the decision to the contrary was in violation of plaintiff's rights to due process and equal protection of the law, as guaranteed by the Fourteenth Amendment.

1. "PERSONAL APPEARANCE
 * * * * *
 b. Members shall have their hair properly cut and neatly trimmed. Hair on top of the head shall not be overly long and shall be combed or brushed in such a manner that it will remain clear of the forehead and not protrude beneath the band of the cap or helmet. Hair shall be neatly trimmed on the sides, and the back of the neck shall be kept trimmed in an even and tapered fashion. . . . If hair is worn in the Bush, Afro, Natural, or Freedom Style, it shall be worn in modera-

tion. Hair shall be well trimmed and tapered on the neck, not touching shirt collar. Sides shall be well groomed or tapered so the hair doesn't protrude extremely from under the hat. If hair is combed, picked, blown out, or teased, it shall not exceed 1½ inch in height.
 . . .
 c. Sideburns shall not extend below the middle of the ear and shall be kept neatly trimmed.
 d. Beards, goatees, or extreme styles of any sort will not be tolerated."
 * * * * *

Roman Black joined the Philadelphia Fire Department in October 1964. From that date until his suspension and dismissal in February 1972, he performed all of his duties as a Philadelphia fireman in a completely satisfactory manner. Somewhat more than three years prior to his dismissal, he began to wear his hair in a modified Afro or "Bush" style. On or about January 19, 1972, General Order No. 4, governing the "personal appearance" of firemen, was promulgated by the Fire Commissioner of the City of Philadelphia. At that time fireman Black was a member of Ladder Co. 17, Battalion 4. Shortly after reporting for work on January 28, 1972, he was informed by two of his superiors that the length of his hair did not conform to the requirements of General Order No. 4. He was thereafter ordered to comply with the regulation prior to reporting for his next duty date, three days hence. During that interval of time, fireman Black made an attempt to comply with the order by having his hair trimmed. Upon next reporting for duty, he was found by his superiors still to be in violation of the regulation and was placed on report. Consequently, as of February 1, 1972, he was suspended from further duty without pay. At a hearing before the Fire Board of Investigation on February 9, 1972, the determination that Black's appearance failed to comply with the regulation was affirmed. On February 10, the plaintiff was informed by Deputy Fire Commissioner Kite and Fire Board Personnel Officer, William McNulty, that should he comply with the regulation, he would be considered for reinstatement as a fireman. The plaintiff, however, declined the offer, maintaining that his hair style and length were then in conformance with the regulation. Consequently, on February 21, 1972, Black was dismissed from the Philadelphia Fire Department. Although he appealed both his suspension and dismissal to the Civil Service Commission, the appeal was denied on July 20, 1972 for the following reasons:

(a) Black's hair was not in compliance with the General Order.

(b) The General Order was sufficiently clear so that reasonable men should have no difficulty interpreting the required compliance.

(c) The Fire Department is a paramilitary institution in character and the General Order, as an integral element of discipline, was moderate, and therefore not unreasonable.

The present Complaint and Motion for a Preliminary Injunction followed the Commission's ruling. At a hearing thereafter, pursuant to the agreement of counsel and with the Court's approval, the plaintiff's motion for a preliminary injunction was consolidated with the trial on the merits as well as with the defendant's motion to dismiss the complaint. At the hearing, the plaintiff introduced into evidence various exhibits attached to the complaint, the notes of testimony from the Fire Board and Civil Service Commission hearings, and various pictures showing the plaintiff's appearance at the time of his suspension. The defendants offered no evidence. The case having been briefed and argued, it is before the Court for disposition.

Before passing on the merits, two preliminary issues deserve being mentioned. This suit has been brought pursuant to 42 U.S.C. § 1983, and 28 U.S.C. § 1331. Since there is no dispute that General Order #4 was promulgated under color of state law, there is no doubt that this Court has proper subject matter jurisdiction. Gere v. Stanley, 453 F.2d 205, 207–208 (3d Cir. 1971); Stull v. School Board of Western Beaver Junior-Senior High School, 459 F.2d 339, 341 (3d Cir. 1972). Likewise, because this case raises neither a question concerning the interpretation of unclear state law nor a matter of paramount interest to the state, it is also clear that the doctrine of abstention is not applicable. Gere v. Stanley, *supra*. There remain for reso-

lution the federal constitutional questions presented.

 In order to resolve these questions, it is important to note at the outset that the plaintiff challenges the constitutionality of the Philadelphia Fire Department Regulation not as a citizen who has been unlawfully deprived of his right to wear his hair in a style, manner, and length which he chooses, but as a municipal employee who has been deprived of continued employment. Thus, the resolution of the question raised by the plaintiff commences with a determination of whether the defendants have the right to require compliance with the appearance regulation in question as a condition to the plaintiff's continued employment with the Philadelphia Fire Department, for "the theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected." Keyishian v. Board of Regents, 385 U.S. 589, 605–606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967); Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). As was said in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972), "[E]ven though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not act. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests . . . . Such interference with constitutional rights is impermissible." Since this is a case where an individual, as a public employee, alleges that a constitutionally

protected interest is being infringed upon by a competing interest of a governmental body, as an employer, its resolution will turn upon a balancing of the respective interests asserted. The balancing test, rather than any other, is required because ". . . the State has interests as an employer in regulating . . . its employees that differ significantly from those it possesses in connection with regulation of . . . the citizenry in general." Pickering v. Board of Education, *supra*, 391 U.S. at 568, 88 S.Ct. at 1734; Commonwealth of Pennsylvania ex rel. Linda Rafferty v. Philadelphia Psychiatric Center, 356 F.Supp. 500 (E.D.Pa.1973).

To achieve the required balancing, it is first necessary to isolate and analyze the competing interests advanced by both parties.

Among other things, the plaintiff has argued that his interest in wearing his hair in a style, manner, and length of his choosing constitutes a constitutional right implicitly protected by the "liberty" assurance of the Due Process Clause of the Fourteenth Amendment. Stull v. School Board of Western Beaver Junior-Senior High School, 459 F.2d 339 (3d Cir. 1972); Massie v. Henry, 455 F.2d 779 (4th Cir. 1972); Gere v. Stanley, 453 F.2d 205 (3d Cir. 1971); Bishop v. Colaw, 450 F.2d 1069 (8th Cir. 1971); Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970); Seal v. Mertz, 338 F.Supp. 945 (M.D.Pa.1972); Martin v. Davison, 322 F.Supp. 318 (W.D.Pa. 1971). Given the substantial body of case law that has reached this conclusion, the Court is satisfied that the plaintiff has demonstrated the existence of such a constitutionally protected interest.[2] There being no dispute that

---

2. Since the application of a balancing test is dictated by Pickering v. Board of Education, *supra*, what appears to be an open question need not be resolved. The problem involves the uncertainty surrounding the weight to be accorded a personal right found to be *implicit* in the "liberty" protection of the Fourteenth Amendment. Originally, personal rights found to be protected by the

"liberty" provision Fourteenth Amendment were afforded protection only from arbitrary interference by the state. See e. g., Pierce v. Society of Sisters, 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 399–400, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

In later cases certain personal rights found to be *implicit* within the "liberty"

the Philadelphia Fire Department's requirement that fireman Black comply with General Order No. 4 infringes upon this constitutionally protected interest, what next must be considered is the interest sought to be promoted by the defendants.

Surprisingly, the Fire Department has chosen to advance a limited argument in support of its regulation. Simply stated, the defendants attempt to equate the fire department with the police department.

Because police forces have been recognized to be paramilitary organizations and therefore possess the power to regulate not only the dress but also the grooming of their members, the defendants advance the same argument on behalf of the fire department. The sole justification offered in support of such a parallel is that firemen, like policemen, are a uniformed force. In addition, because the power of a police department to regulate grooming has been justified on the basis, among others, that uniformity of appearance tends to instill public confidence, acceptance, and respect, and therefore maximized the effectiveness of the police in the performance of their duties, the defendants likewise advance the same argument on behalf of the fire department. The sole justification offered in support of this parallel is that "firemen are always on display and project an image to members of the public as protectors of their lives and property." [3] Because the fire department has never attempted to justify its regulation on the basis of safety, the question that remains before the Court is whether the two interests that have been asserted are valid, and, if so, whether they outweigh the interest asserted by the plaintiff.

■ In advancing the argument that the fire department should properly be considered a paramilitary organization the defendants do not posit the existence of a paramilitary interest as such. Instead, they seek to invoke a form of judicial restraint that has customarily been accorded to military matters. At the core of this practice of restraint is

protection of the Due Process Clause of the Fourteenth Amendment have also been held to be "fundamental rights", thus requiring any state regulation to be justified by the showing of a "compelling" state interest. See e. g., Griswold v. State of Connecticut, 381 U.S. 479, 486, 493, 502–503, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) ; Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

Whether all rights found to be implicitly protected by the Constitution are "fundamental" is an open question. Recently, while considering the question of whether the right to education was "fundamental", the Supreme Court, in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), made the following statement :

"The key to discovering whether education is "fundamental" is not to be found in comparisons of the relative societal significance of education as opposed to subsistence or housing. Nor is it to be found by weighing whether education is as important as the right to travel. Rather, the answer lies in assessing whether there is a right to education explicitly or implicitly guaranteed by the Constitution. (Citations omitted)." 411 U.S. at 33, 93 S.Ct. at 1297.

At least one court has construed this language to mean that *any* right found either implicitly or explicitly protected by the Constitution is a "fundamental" right. Republican College Council of Pennsylvania v. Winner, 357 F.Supp. 739 (E.D.Pa.1973).

For the purposes of this opinion, however, it is unnecessary to resolve the question of whether the governance of the length and style of one's hair is a "fundamental" right. It is sufficient that the plaintiff has demonstrated the existence of a constitutionally protected right that is being infringed upon by his governmental employer. Since, outside the employer-employee relationship, such a right, at a minimum is afforded protection against state regulation that fails to bear a reasonable relation to a legitimate state interest, it is unnecessary, for the purpose of applying a balancing test, to consider whether the government interest must contain compelling elements.

3. Defendants' Trial Brief, 5.

the reluctance of the judiciary to interfere in matters of military authority involving discipline. The reason for this policy has its origin in this country's tradition of providing the military establishment with broad power to deal with its own personnel. Hunt v. Board of Fire Commissioners of Massapequa Fire District, 68 Misc.2d 261, 327 N.Y. S.2d 36, 42 (Sup.Ct. 1971). In actuality, therefore, the Fire Department seeks judicial recognition of an interest in the maintenance of a *military* form of *discipline* over its members. Since such an interest, should its existence be recognized, borders upon an unqualified right to control individual appearance as well as behavior, there is little doubt that the right to regulate grooming would fall within its scope. This same interest as applied to a fire department was advanced in Hunt v. Board of Fire Commissioners of Massapequa Fire District, *supra*. But in that case as in this, never was it suggested why a *military* form of discipline is necessary to the effective operation of a fire department. And while this Court is willing to accept the fact that a fire department has a valid disciplinary interest in regulating the activities of its members during the performance of their training and firefighting activities, nowhere has it been suggested how the regulation of grooming would be reasonably related to the furtherance of such a qualified interest. Accordingly this Court holds that the Fire Department does not have a valid interest in the maintenance of a military form of discipline over its members and further that the qualified disciplinary interest it does possess does not encompass the regulation of grooming.

An analysis of the second interest advanced by the defendants brings much the same result. Because *police* are in constant contact with the public, Courts considering the question of whether police departments may properly regulate the grooming of their members have often relied upon more than such a department's interest in maintaining discipline. Because police are in constant contact with the public it has been held that a police department's regulation of grooming is reasonably related to the instillation of public confidence in the ability of police to perform their duties. The rationale would appear to be that the more neutral police appear to the public, the more readily they receive acceptance, cooperation, and respect, thus maximizing their effectiveness. See, e. g., Dwen v. Barry, 336 F.Supp. 487 (E.D. N.Y.1971); Greenwald v. Frank, 70 Misc.2d 632, 334 N.Y.S.2d 680 (Sup.Ct. 1972). While the defendants argue that "firemen are always on display and project an image to members of the public as protectors of their lives and property," it is clear that the performance of their duties does not require the same kind or extent of public contact as is required of police. Thus, although this Court is willing to recognize the validity of the interest sought to be advanced, it cannot accept the argument that it is entitled to much weight.

Having reached the foregoing conclusion, and because the defendants have advanced no interest deserving of much weight, the question of balancing the respective interests of the parties is greatly simplified. Because the only valid interest advanced by the defendants is insubstantial, there is no need to gauge the weight to be afforded the constitutionally protected interest advanced by the plaintiff. The Court need only note that the plaintiff's interest, though constitutionally protected, is not overwhelming. Richards v. Thurston, 424 F.2d 1281, 1284 (1st Cir. 1970). For example, had the present appearance regulation been promulgated and justified in the interest of safety, there is little doubt that such an interest would be superior to the plaintiff's. See, e.g., Olszewski v. Council of Hempstead Fire Dept., 70 Misc.2d 603, 334 N.Y.S.2d 504 (Sup.Ct. 1972). No such interest having been advanced, however, the plaintiff is entitled to reinstatement. Since the parties, at the hearing, agreed that if the plaintiff was entitled to reinstatement he was entitled to back pay as well,

the parties will have ten days to submit a final order to this Court covering the plaintiff's reinstatement and the amount of wages due him. In light of the Court's resolution of the plaintiff's substantive due process argument, it is unnecessary to consider the other federal constitutional questions that he has raised.