**Francis MUSCARE, Plaintiff-Appellant,**

v.

**Robert J. QUINN, Individually and as Commissioner, Chicago Fire Dept., Defendant-Appellee.**

**No. 74–1460.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1975.

Decided May 21, 1975.

Rehearing and Rehearing En Banc Denied June 17, 1975.

Linda R. Hirshman, Chicago, Ill., for plaintiff-appellant.

Richard L. Curry, Corp. Counsel, and Edmund Hatfield, Asst. Corp. Counsel, Chicago, Ill., for defendant-appellee.

Before CLARK, Associate Justice,* HASTINGS, Senior Judge, and STEVENS, Circuit Judge.

PER CURIAM.

Appellant-Muscare, a fireman with the Chicago Fire Department since 1955, was suspended from his duties for a 29-day period from February 27 to March 28, 1974, on the ground that his "goatee" violated the Department's hair regulations.[1] On March 11, 1974, appellant filed a complaint in the United States District Court for the Northern District of Illinois seeking injunctive relief and claiming that his constitutional right to determine his personal appearance had been violated. The district court held a hearing on the matter and denied relief.

On this appeal, Lt. Muscare strenuously argues that this circuit's decision in Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. den., 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970), compels a recognition of the "right to wear one's hair at any length or in any desired manner [as] an ingredient of personal freedom protected by the United States Constitution," 419 F.2d at 1036, and requires an invalidation of the Department's regulation, absent any showing of "substantial justification" for the restrictions. The Department argues that its regulation can be justified on the basis of: (1) the need to insure the efficient operation of gas masks which must at times be worn by fire-fighters; (2) the need for discipline in a paramilitary setting; and (3) the need to present a well-groomed and uniform appearance or image to the public. The sufficiency of these various rationales is a matter of considerable dispute in the decided cases;[2] however, we find it unnecessary to resolve that controversy in this case,

---

* Associate Justice Tom C. Clark, United States Supreme Court (Ret.) is sitting by designation.

1. Section 51.133 of the Rules and Regulations of the Chicago Fire Department provides:

   Section 51.133, Proper Personal Appearance
   All members of the Chicago Fire Department shall present a clean and proper appearance in personal care and attire at all times. The face shall be clean-shaven, except that a non-eccentric mustache is permissible. Mustaches shall not extend beyond a line perpendicular to the corner of the mouth and the full upper lip must be readily visible. Sideburns shall be trimmed short and shall be no lower than a line from the middle of the ear.
   Hair shall be worn neatly and closely trimmed, and the hair outline shall follow the contour of the ear and slope to the back of the neck. It will be gradually tapered overall in order to present a neat appearance.

2. Some courts have upheld hair regulations solely on the basis of "paramilitary" discipline or the need to present a well-groomed image to the public, see Stradley v. Anderson, 478 F.2d 188 (8th Cir. 1973) (police); Yarbrough v. City of Jacksonville, 363 F.Supp. 1176 (M.D. Fla.1973) (firemen); Akridge v. Barres, 122 N.J.Super. 476, 300 A.2d (1973), aff'd, 65 N.J. 266, 321 A.2d 230 (1974) (police); Matter of

Greenwald v. Frank, 70 Misc.2d 632, 334 N.Y. S.2d 680, aff'd, 40 A.D.2d 717, 337 N.Y.S.2d 225 (1972) (police); cf. Anderson v. Laird, 437 F.2d 912 (7th Cir. 1971) (National Guard); other courts, however, have rejected this view, see Dwen v. Barry, 483 F.2d 1126 (2d Cir. 1973) (police); Black v. Rizzo, 360 F.Supp. 648 (E.D.Pa.1973) (distinguishing between police and firemen). More recently, fire departments across the country have begun to justify hair regulations on the basis of safety considerations, in particular, the efficient use of gas masks. Though fundamentally a fact question, most courts have accepted this theory, see Michini v. Rizzo, 379 F.Supp. 837 (E.D.Pa. 1974), aff'd, 511 F.2d 1394 (3d Cir., decided March 24, 1975); Hordorwich v. Bd. of Police and Fire Comm'rs, 18 Ill.App.3d 20, 309 N.E.2d 303 (1974); Manco v. Town of Irvington, 126 N.J.Super. 148, 313 A.2d 219 (1973), aff'd, 64 N.J. 142, 313 A.2d 204 (1974); Olszewski v. Council, Fire Dept., 70 Misc.2d 603, 334 N.Y. S.2d 504 (1972). Only a few courts have found no basis for this justification, see Lindquist v. City of Coral Gables, 323 F.Supp. 1161 (S.D.Fla.1971); Hunt v. Bd. of Fire Comm'rs, 68 Misc.2d 261, 327 N.Y.S.2d 36 (1971). In passing, we note but without holding that the challenged hair regulation, § 51.133, does not appear to be co-extensive with the need for safe and efficient use of gas masks and, if that is the sole justification, might well be more narrowly drawn.

for appellant was suspended without procedural due process.

It appears that appellant's goatee first came to the attention of his superiors in December 1973, when Lt. Muscare, along with the rest of his company, attended a class at the Chicago Fire Academy, taught by one Leonard Johnson, a drill instructor, to train firefighters in the use of self-contained breathing apparatus. At that time, Instructor Johnson, using instructional materials which had been provided him, informed Lt. Muscare's company that facial hair should not be worn with the self-contained breathing apparatus, since hair prevented the wearer from obtaining a proper seal on the mask portion of the apparatus. Appellant disputed this, saying: "Boston and New York have men with long hair, beards and mustaches, and they are not concerned about it."

During the course of instruction, each member of the company was expected to don a mask and perform various activities, including walking up five floors of the training tower with the gas mask on, sealed, and functioning. Although it is unclear whether Lt. Muscare, as a senior officer, was required to participate in the training, it is clear that appellant did not put the apparatus on and Johnson had no direct knowledge of whether or not Lt. Muscare could obtain a proper seal. Appellant testified that he successfully tested the mask portion of the apparatus during the training and had never experienced any difficulty obtaining a satisfactory mask seal in the past.

After class, Instructor Johnson discussed Muscare's conduct with Chief Prohaska, the drillmaster, and stated that he did not know whether Muscare, while wearing his goatee, could get a good seal on a face mask. Later that month, appellant's superior officer, Chief Morgan, warned him that he would not be permitted to continue working as a firefighter unless he shaved off his beard. A few days thereafter, appellant was informed that charges had been filed against him with the administrative authorities. Nothing more appears to

have taken place in regard to this matter for two and one-half months. Then, on the morning of February 27, 1974, three of Lt. Muscare's superiors appeared at his duty station and announced that he was being suspended as of that moment and that he was to turn in his equipment and badge.

On March 4, 1974, the Chief of Personnel sent appellant a letter, informing him that he was being suspended for 29 days for alleged violations of § 51.133 (hair regulation), § 61.001 ("conduct unbecoming a member or employee of the Chicago Fire Department"), and § 61.006 (disobedience of orders). The instant action followed, attacking not only the constitutionality of the hair regulation, but also the summary suspension procedures employed by the Department.

Appellant urges that due process requires that some opportunity to respond to charges against him be made available to the government employee prior to disciplinary action against him. *See* Hostrop v. Board of Junior College District No. 515, 471 F.2d 488 (7th Cir. 1972), cert. den., 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973). The Department responds that due process was satisfied since appellant had actual notice of the charges against him and had a statutory right to a post-suspension hearing before the Civil Service Commission, which he failed to exercise. We conclude that post-suspension review is insufficient.

Section 10–1–18 of the Illinois Municipal Code (Ill.Rev.Stat.1973, ch. 24) provides in pertinent part as follows:

§ 10–1–18. *Removal—Suspension— Retirement*

Except as hereinafter provided in this section, no officer or employee in the classified civil service of any municipality who is appointed under the rules and after examination, may be removed or discharged, or suspended for a period of more than 30 days, except for cause upon written charges and after an opportunity to be heard in his own defense. \* \* \* Nothing in this Division 1 limits the power of any

officer to suspend a subordinate for a reasonable period, not exceeding 30 days except that any employee or officer suspended for more than 5 days or suspended within 6 months after a previous suspension shall be entitled, upon request, to a hearing before the civil service commission concerning the propriety of such suspension.

The Illinois Supreme Court recently had occasion to examine the constitutionality of summary suspension procedures used by the Chicago Police Department and concluded that the demands of due process were met by post-suspension review for suspensions of more than five days and less than 30 days. Kropel v. Conlisk, 322 N.E.2d 793 (Ill.S.Ct., decided January 30, 1975). That court, however, did not have the benefit of the United States Supreme Court's recent decision in Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Though *Goss* is a "school" case, it nonetheless points the way to our resolution of the present case.

■ It can hardly be disputed that appellant, as a twenty-year veteran of the civil service, has a protected property interest in his employment, for "a state employee who under state law, or rules promulgated by state officials, has a legitimate claim of entitlement to continued employment absent sufficient cause for discharge may demand the procedural protections of due process." 95 S.Ct. at 735. Nor can it be disputed that appellant's suspension for 29 days is not *de minimis*, and the "Court's view has been that as long as a property deprivation is not *de minimis*, its gravity is irrelevant to the question whether account must be taken of the Due Process Clause." 95 S.Ct. at 737. It remains to answer the question what process is due, for in each situation the requirement is a flexible one.

■ As the Court has stated before and reaffirmed in *Goss*, "many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case," Mullane v. Central Hanover Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). In the circumstances of America's high schools, the Court thought that notice, an explanation of the evidence the authorities have, and an opportunity to present his side of the story were sufficient to protect the student, and we think that at least this much is required in the circumstances of a public employee's suspension. -Not only are alleged transgressions justifying suspension often more serious than school discipline problems, but the corresponding penalties are potentially more damaging, for reputations, careers, and substantial amounts of lost pay are at stake.[3]

■ Public employees facing temporary suspension for less than 30 days have interests qualifying for protection under the Due Process Clause, and due process requires at the minimum that they be granted a hearing prior to suspension where they may be fully informed of the reasons for the proposed suspension and where they may challenge their sufficiency. Whether such persons should be granted the full panoply of rights envisioned in Ill.Rev.Stat., Ch. 24, § 10–1–18, for suspensions great-

---

**3.** Here, appellant lost some $1,400 in pay during the 29-day suspension. Such a financial blow can be disastrous to many civil servants. As Judge Skelton noted in Ricucci v. United States, 425 F.2d 1252, 192 Ct.Cl. 1 (1970):

Few [government employees] earn more than enough to pay their living expenses from month to month, and when their salaries are cut off they may be in the same destitute circumstances as a welfare recipient whose aid has been discontinued. [425 F.2d at 1257 (concurring opn.).]

er than 30 days is a question which we need not now address, since no hearing of any kind was accorded appellant prior to his suspension.[4]

We do not think that the requirement of presuspension review will result in any unnecessary burden on the administration of public services, nor will it shackle administrators and prevent them from dealing with emergency disciplinary problems, for, as the United States Court of Appeals, District of Columbia Circuit once pointed out:

> In a wide variety of situations, it has long been recognized that where harm to the public is threatened, and the private interest infringed is reasonably deemed to be of less importance, an official body can take summary action pending a later hearing. [R. A. Holman & Co. v. SEC, 112 U.S.App.D.C. 43, 299 F.2d 127, 131, cert. den., 370 U.S. 911, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962).]

Here, we perceive no such justification for avoiding the requirement of a presuspension hearing. Even if we accept the Department's contention that the rationale behind its hair regulation is safety, a number of steps short of summary suspension are available to the Department pending a hearing on a violation of that regulation. Moreover, there is merit to appellant's comment in his brief that:

The present case hardly presents an emergency requiring the Fire Department to act without any prior process, where the Fire Department utilized the services of Lt. Muscare for a period of over two months from the time in December of 1973 when he was initially reprimanded for wearing a goatee to the time he was suspended on February 27, 1974.

Accordingly, we reverse the judgment of the district court and remand for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

## ON PETITION FOR REHEARING

In the petition for rehearing and suggestions for rehearing *en banc* or, in the alternative, for certification of questions of law to the Supreme Court filed in the above-entitled cause, it is suggested that there is a conflict between our decision and *Brubaker* v. *Board of Education, School District 149, Cook County, Ill.,* 502 F.2d 973 (7th Cir. 1975). We note that in *Brubaker* on rehearing *en banc* this court affirmed the district court judgment by an equally divided vote, 502 F.2d 1000, but failed to reinstate the panel opinion. In addition, *Goss* v. *Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), which we decided was controlling in *Muscare*, came down after *Brubaker*.

On consideration of the petition and suggestions, no judge in active service

---

4. The Supreme Court's disposition of Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), only confirms our analysis of the precise question presented here. There, the Court rejected a due process attack on the discharge of a federal civil servant who had been provided, pursuant to the Lloyd-LaFollette Act, a month's advanced notice of the reasons for his proposed discharge, the materials on which the notice is based, and the opportunity to appear personally before the official having the authority to make or recommend the final decision. Although a three-judge plurality expressed the view that the statute which established the employment property right also established the procedural

safeguards to which the employee was entitled, two other Justices concurred in the result solely because they believed that the statute's provision of notice and an opportunity to be heard prior to discharge satisfied the minimal requirements of constitutional due process. In dissent, four other Justices would have gone further and required additional safeguards such as an impartial hearing examiner, the opportunity to present witnesses, and the right to conduct cross-examination. It can hardly be said, therefore, that Arnett stands for the proposition that, by accepting governmental employment, a civil servant is entitled only to such procedures as are provided by statute.

having requested a vote thereon, nor any judge having voted to grant the suggestions, and all of the members of the panel having voted to deny a rehearing,

It is ordered that the petition for a rehearing in the above-entitled cause be and the same is hereby denied.